912 F.2d 1066
 29 Wage & Hour Cas. (BN 1578, 116 Lab.Cas. P 35,409
 Daniel E. BRATT; Frank Cooke; Ray Marin; Ishmael S.
Moran, Jr.; Billy W. Pugh; Russell Turner;
James Blaydes; Tyrone Allain,
Plaintiffs-Appellants-Cross-Appellees,
v.
COUNTY OF LOS ANGELES, Defendant-Appellee-Cross-Appellant.
 Nos. 89-55373, 89-55453.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1990.
Decided Aug. 27, 1990.
 
 Alexander B. Cvitan, Reich, Adell & Crost, Los Angeles, Cal., for plaintiffs-appellants-cross-appellees.
 Albert D. Kelly, Principal Deputy County Counsel, Los Angeles, Cal., for defendant-appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before HUG, BOOCHEVER and BEEZER, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Daniel E. Bratt, Frank Cooke, Ray Marin, Ishmael S. Moran, Jr., Billy W. Pugh, Russell Turner, James Blaydes, and Tyrone Allain (Employees) appeal the district court's decision refusing to award them liquidated damages on their claim under the Fair Labor Standards Act (FLSA or the Act), specifically 29 U.S.C. Sec. 216(b) (1982). The County of Los Angeles (County) cross-appeals the district court's award of overtime wages, interest, and attorneys' fees in favor of the Employees on this claim. The County argues that application of the FLSA to County probation and child protection activities violates the tenth amendment and, in the alternative, that the Employees were exempt from the FLSA. We affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 The facts are not in dispute. Six of the Employees, Bratt, Marin, Cooke, Moran, Pugh, and Turner, are employed by the County's Probation Department as Deputy Probation Officers II (DPO II). These Employees conduct factual investigations for, and make recommendations to, County courts, either to aid in sentencing an adult offender or to determine whether and how to detain a minor who has been arrested. Some of them also supervise a crew of minors who have been ordered as part of a court sentence to participate in the Juvenile Alternative Work Service program or other correctional activity.
 
 
 3
 The remaining Employees, Allain and Blaydes, are employed by the County's Department of Children's Services as Children Treatment Counselors II and III (CTC II and III) respectively. Allain and Blaydes supervise abused and neglected children at the County's MacLaren Children's Center until they can be suitably placed elsewhere. Blaydes also acts as a "team leader" for the CTC staff on his shift in his unit.
 
 
 4
 Since April 1986, all eight Employees have accumulated overtime hours for which they were not paid 1 1/2 times their regular rate of pay. The Employees filed suit under the FLSA for recovery of overtime pay, liquidated damages, and attorneys' fees. After a bench trial on November 15-17, 1988, the district court found in favor of the Employees and awarded them damages in the amount of 1 1/2 times their regular rate of pay for each hour worked in excess of forty per week, pre- and post-judgment interest, and attorneys' fees. The court, however, refused to award liquidated damages. Both the Employees and the County appeal the district court's decision.
 
 DISCUSSION
 I. Tenth Amendment
 
 5
 The County argues that applying the FLSA to County probation and child protection activities exceeds federal powers under the commerce clause and violates the tenth amendment. The district court did not address this issue in its findings of fact and conclusions of law, but by proceeding with trial and judgment on the merits of the Employees' claims, the court implicitly rejected the County's constitutional challenge.
 
 
 6
 The constitutionality of applying the FLSA to County probation and child protection activities is a question of law which we review de novo. See United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). The County maintains that its probation and child protection activities are traditional government functions and thus are beyond federal commerce power to regulate under National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), overruled in Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The County recognizes that National League of Cities was overruled in Garcia, but nevertheless argues that Garcia should apply only to activities such as city mass transit systems, not to the County's services at issue here.
 
 
 7
 The County's attempt to resurrect the test in National League of Cities is without merit. The Court in Garcia specifically "reject[ed], as unsound in principle and unworkable in practice, a rule of state immunity from federal regulation that turns on a judicial appraisal of whether a particular governmental function is 'integral' or 'traditional.' " 469 U.S. at 546-47, 105 S.Ct. at 1015. Thus, any attempt to distinguish the decision in Garcia from the present case on the grounds that the County's probation and child protection services are more traditional government functions than mass transit services is unavailing.
 
 II. Exemption from the FLSA
 
 8
 The County also argues that the Employees are exempt from coverage under the Act because they are administrative employees. The district court found that the Employees were not administrative employees and thus were not exempt from FLSA coverage. "The question of how the [Employees] spent their working time ... is a question of fact [reviewed for clear error]. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law" reviewed de novo. Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714, 106 S.Ct. 1527, 1530, 89 L.Ed.2d 739 (1986).
 
 
 9
 The FLSA provides that its overtime and minimum wage requirements "shall not apply with respect to--(1) any employee employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary." 29 U.S.C. Sec. 213(a)(1) (1982).
 
 
 10
 The term "employee employed in a bona fide * * * administrative * * * capacity" ... shall mean any employee:
 
 
 11
 (a) Whose primary duty consists of ...
 
 
 12
 (1) The performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, ...
 
 
 13
 ... and
 
 
 14
 (b) Who customarily and regularly exercises discretion and independent judgment; and
 
 
 15
 (c) ...
 
 
 16
 (3) Who executes under only general supervision special assignments and tasks; and
 
 
 17
 (d) Who does not devote more than 20 percent ... of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (c) of this section; and
 
 
 18
 (e)(1) Who is compensated for his services on a salary or fee basis at a rate of not less than $155 per week....
 
 
 19
 29 C.F.R. Sec. 541.2 (1987) (emphasis added). "The criteria provided by regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act." Mitchell v. Williams, 420 F.2d 67, 69 (8th Cir.1969). Thus, the County must prove that each Employee meets all five requirements in this regulation before that Employee can be held exempt from coverage under the FLSA.
 
 
 20
 The key requirement for exemption for purposes of this appeal is that the employee's primary work be "directly related to management policies or general business operations of his employer or his employer's customers." 29 C.F.R. Sec. 541.2(a)(1) (1987). The regulations explain that this language
 
 
 21
 describes those types of activities relating to the administrative operations of a business as distinguished from "production" ... work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.
 
 
 22
 (b) The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business, as, for, example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control....
 
 
 23
 (c) As used to describe work of substantial importance to the management or operation of the business, the phrase ... is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business....
 
 
 24
 (d) Under Sec. 541.2 the "management policies or general business operations" may be those of the employer or the employer's customers. For example, many bona fide administrative employees perform important functions as advisers and consultants but are employed by a concern engaged in furnishing such services for a fee. Typical instances are tax experts, labor relations consultants, financial consultants, systems analysts, or resident buyers. Such employees, if they meet the other requirements of Sec. 541.2, qualify for exemption regardless of whether the management policies or general business operations to which their work is directly related are those of their employer's clients or customers or those of their employer.
 
 
 25
 Id. Sec. 541.205.
 
 
 26
 The County contends that the trial court misinterpreted these regulations by concluding that the Employees were production, as opposed to administrative, employees. The primary responsibility of the DPO II Employees is to conduct factual investigations of adult offenders or juvenile detainees and advise the court on their proper sentence or disposition within the system. The County claims that the Employees' duties are more akin to those of advisory specialists or consultants such as stock brokers or insurance claim agents and adjusters--positions the regulations consider to meet the test of "directly related to management policies or general business operations." See id. Sec. 541.205(c)(5). Thus, the County argues, these employees are essentially "servicing" the "business" of the courts by "advising the management" and should be considered administrative under Sec. 541.205(b).[1]
 
 
 27
 The language of the regulations forecloses the County's argument. The test is whether the activities are directly related to management policies or general business operations. The district court correctly captured the essence of this requirement by interpreting it to mean "the running of a business, and not merely ... the day-to-day carrying out of its affairs." Accordingly, to the extent that probation activities can be analogized to a business, the work of the DPO II Employees primarily involves the day-to-day carrying out of the business' affairs, rather than running the business itself or determining its overall course or policies. This interpretation also reflects the position of the Department of Labor. In two recent letter rulings, the Department found that juvenile and adult probation officers do not qualify for exemption as administrative employees. Labor Dept., Wage and Hour Division, Ltr. Ruls. February 16, 1988 & April 12, 1988.[2] "We must ... give due deference to the interpretation of statutes and regulations by the agency charged with their administration." Western Pioneer, Inc. v. United States, 709 F.2d 1331, 1335 (9th Cir.1983).
 
 
 28
 In addition, while the regulations provide that "servicing" a business may be administrative, id. Sec. 541.205(b), "advising the management" as used in that subsection is directed at advice on matters that involve policy determinations, i.e., how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation. The services the Employees provide the courts do not relate to court policy or overall operational management but to the courts' day-to-day production process. Thus, the Employees are not engaged in "servicing" a business within the meaning of Sec. 541.205(b).
 
 
 29
 The use of stock brokers and insurance claims agents and adjusters in Sec. 541.205(c)(5) as examples of employees who are "servicing" a business is not inconsistent with the language of the regulations. To the extent that these employees primarily serve as general financial advisors or as consultants on the proper way to conduct a business, e.g., advising businesses how to increase financial productivity or reduce insured risks, these employees properly would qualify for exemption under this regulation. Here, although probation officers provide recommendations to the courts, these recommendations do not involve advice on the proper way to conduct the business of the court, but merely provide information which the court uses in the course of its daily production activities. Thus, the duties of the Employees here do not qualify them as exempt administrative employees under the applicable regulations, even if conceivably some probation officers might be exempt.
 
 
 30
 The County also argues that we should ignore these regulations because they are drafted with commercial businesses in mind and are not applicable to public service. Although the County correctly notes that the terms used in the regulations are general business terms and that analogies between business and government often are somewhat strained, the general principles and rationales underlying the regulations are instructive in a government context, at least as they apply to the employees involved here. "Though not binding upon this court, these regulations, promulgated by the agency primarily responsible for enforcement of Congress' enactments, are entitled to great deference. The presumption is that they are valid unless shown to be erroneously in conflict with the Act itself." Brennan v. City Stores, Inc., 479 F.2d 235, 239-40 (5th Cir.1973). We find no conflict between the regulations and the FLSA on the issue before us and therefore defer to those regulations in interpreting the Act as it applies to the Employees.
 
 
 31
 Finally, the County maintains that applying the FLSA to the Employees here would not serve the purposes of the FLSA, which the County claims was directed against sweatshop labor rather than highly paid civil servants. The Employees, however, meet all the qualifications for coverage under the Act and are not exempted from its protection. The County's argument that this contravenes the purposes of the Act more appropriately would be made to Congress or to the Department of Labor, rather than to the courts.
 
 
 32
 We agree with the district court that none of the Employees engages in activities primarily related to management policies or general business operations. None of the Employees, therefore, satisfies the first requirement of the regulation's administrative employee exception, and we need not address whether the Employees satisfy the remaining requirements. We thus affirm the district court's decision in favor of the Employees and its award of overtime compensation, interest, and attorneys' fees at trial.
 
 III. Liquidated Damages
 
 33
 Having agreed with the district court that the Employees were not exempt from coverage under the FLSA, we address whether the Employees are entitled to liquidated damages. Overtime pay for hours worked in excess of forty hours per week is required for covered employees under 29 U.S.C. Sec. 207 (1982). "Any employer who violates the provisions of [that] section ... shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." Id. Sec. 216(b).
 
 
 34
 [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216....
 
 
 35
 Id. Sec. 260. "An employer has the burden of showing that the violation of the [FLSA] was in good faith and that the employer had reasonable grounds for believing that no violation took place. Absent such a showing, liquidated damages are mandatory." Equal Employment Opportunity Comm'n v. First Citizens Bank, 758 F.2d 397, 403 (9th Cir.) (emphasis added and citation omitted), cert. denied, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 228 (1985).
 
 
 36
 The district court refused to award liquidated damages to the Employees, finding "[t]he facts are convincing to the court that the county's determinations were made in good faith and were based on reasonable grounds." The Employees challenge this decision, claiming that the County lacked both a good faith intent to comply with the FLSA and a reasonable basis for its interpretation of the FLSA and the applicable regulations. "What constitutes good faith on the part of [the County] and whether [it] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA] are mixed questions of fact and law." 29 C.F.R. Sec. 790.22(c) (1987). We review such questions de novo to the extent they involve application of legal principles to established facts, and for clear error to the extent they involve an inquiry that is essentially factual. See McConney, 728 F.2d at 1202. Once the employer has demonstrated its good faith and reasonable belief, the district court's refusal to award liquidated damages is reviewed for abuse of discretion. See First Citizens Bank, 758 F.2d at 402; 29 U.S.C. Sec. 260; 29 C.F.R. Sec. 790.22(c).
 
 A. Good Faith
 
 37
 The statutory requirement of good faith and reasonable grounds establishes a test with both subjective and objective components. Brock v. Shirk, 833 F.2d 1326, 1330 (9th Cir.1987) (per curiam), vacated on other grounds 488 U.S. 806, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988); see Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir.1982); Laffey v. Northwest Airlines, Inc., 567 F.2d 429, 463-66 (D.C.Cir.1976), cert. denied, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). "To satisfy the subjective 'good faith' component, the [County was] obligated to prove that [it] had 'an honest intention to ascertain what [the FLSA] requires and to act in accordance with it." Shirk, 833 F.2d at 1330 (quoting First Citizens Bank, 758 F.2d at 403); accord Brunner, 668 F.2d at 753; Laffey, 567 F.2d at 464.
 
 
 38
 Whether the County had an honest intention to ascertain what the FLSA requires and to act in accordance with it involves an inquiry that is essentially factual and which we thus review for clear error. The district court found "that an objective as possible a study was made of the job classifications for the purpose of determining presumptively exempt and non-exempt status." Moreover, there is no evidence that the County attempted to evade its responsibilities under the Act. "[A] decision made above board and justified in public is more likely to satisfy this test. An employer's willingness to state and defend a ground suggests a colorable foundation, and openness facilitates challenges by the employees. Double damages are designed in part to compensate for concealed violations, which may escape scrutiny." Walton v. United Consumers Club, Inc., 786 F.2d 303, 312 (7th Cir.1986). The district court concluded that "[t]his is not a case, like many of those cited [by the Employees], where the employer is using 'ticky-tack' reasons to attempt to evade the wage and hour laws."
 
 
 39
 The Employees nevertheless claim that the County's lack of good faith intent to comply with the FLSA is evidenced by 1) its assignment of the coverage decisions to someone with insufficient expertise in this area; 2) its reliance solely on written job specifications as opposed to individual job descriptions; 3) its refusal to review pertinent data obtainable from internal documents as well as the Employees' representative; and 4) its establishment of group exemptions. While the Employees present arguments that the County did not do as good a job as it could have done, they fail to show that the County had anything other than an honest intention to comply with the Act. The person assigned to make the coverage decisions arguably was adequately qualified, and his decisions whether to make more extensive studies of individual jobs and corresponding data involved practical considerations on how best to complete the required evaluations in a timely fashion. The district court's finding that the County's actions were taken in good faith, therefore, was not clearly erroneous.
 
 B. Reasonable Grounds
 
 40
 "The additional requirement that the employer have reasonable grounds for believing that his conduct complies with the Act imposes an objective standard by which to judge the employer's behavior." Brunner, 668 F.2d at 753. Here, determining the reasonableness of the County's belief involves applying the proper interpretation of the FLSA and supporting regulations to uncontested facts, a primarily legal determination which we review de novo. Although we conclude that the County's interpretation of the regulations was incorrect, its belief in that interpretation was not unreasonable. The regulations do not specifically address government employees, and the duties performed by the DPO II Employees reasonably could be construed as analogous to those of stock brokers and insurance claims agents and adjusters, cited in the regulations as examples of exempt employees. Under these circumstances, we agree with the district court that the County had reasonable grounds for believing that it had not violated the FLSA.
 
 
 41
 The district court, therefore, did not err in finding that the County acted in good faith and had reasonable grounds for its decision not to pay the Employees overtime under the FLSA. Thus, liquidated damages were not mandatory but were within the discretion of the district court to award. The Employees do not claim that the court abused its discretion in refusing to award liquidated damages--only that the court had no such discretion in this case. We conclude that the district court did not abuse its discretion by refusing to award liquidated damages.
 
 IV. Attorneys' Fees
 
 42
 The Employees request their attorneys' fees on appeal. As the prevailing party, the Employees are entitled to reasonable attorneys' fees incurred to defend against the County's cross-appeal. See Newhouse v. Robert's Ilima Tours, Inc., 708 F.2d 436, 441 (9th Cir.1983); 29 U.S.C. Sec. 216(b) (1982). Because they do not prevail on their own appeal, however, they are not entitled to fees incurred pursuant to that appeal.
 
 CONCLUSION
 
 43
 The County has not raised a sufficiently compelling argument that its probation and child protection services are constitutionally exempt from federal regulation under the FLSA. Nor are the Employees administrative employees precluded from coverage under the Act. The district court also was within its discretion in refusing to award liquidated damages to the Employees. The court's decision, therefore, is affirmed, and the Employees are awarded reasonable attorneys' fees on appeal, representing only their efforts to defend against the County's cross-appeal.
 
 
 44
 AFFIRMED.
 
 
 
 [1]
 The County's argument focuses solely on the DPO II Employees and does not address the applicability of the regulations to CTC II and III Employees. The County fails to explain how or why the regulations exempt CTC II and III Employees
 
 
 [2]
 Neither ruling involved the parties to this action, and the rulings were issued after the Employees filed this suit against the County. There is no indication, however, that the duties of the deputy probation officers here were different from those considered in the Labor Department's rulings