## CIRCUIT COURT OF THE CITY OF RICHMOND

Greg Luzik et al.

v.

Commonwealth of Virginia et al.

May 5, 1995

Case No. HC-1303

BY JUDGE T. J. MARKOW

This matter was tried to the court without a jury over two days. It involves claims by juvenile probation and parole officers that they are entitled under the Fair Labor Standards Act (FLSA or the Act), 29 U.S.C. § 201, *et seq.*, to pay at time plus one-half for any hour worked over forty per week.

Plaintiffs, 103 juvenile probation officers who work in twenty Court Service Units (CSUs) for the Virginia Department of Youth and Family Services (DYFS), filed suit against the Commonwealth alleging a violation of the FLSA. The Commonwealth considers each juvenile probation officer exempt under the Act, therefore none are entitled to receive payment of time and one half per hour if and when they work more than forty hours in a work week. The juvenile probation officers contend their designation as "exempt" under the FLSA is improper.

The issues of liability and damages were bifurcated, and here only the liability claims were litigated. In the liability phase the parties stipulated that testimony as to job duties applies equally to each employee in the position at the twenty different geographic locations throughout the Commonwealth. Accordingly, the only liability issue is whether the Commonwealth has complied with the FLSA in finding the juvenile probation

officers exempt. If the officers are exempt from FLSA the case is over, if not it must be tried on the issue of damages.

The burden of proving an exemption under the FLSA rests on the employer. *Clark v. J. M. Burson Co.*, 789 F.2d 282 (4th Cir. 1986). The Commonwealth must show (1) that each juvenile probation officer is a salaried, rather than an hourly employee, and (2) that the primary duty of each is an exempt duty. There are three categories of exempt duties: administrative, professional, and executive. The Commonwealth must satisfy both prongs for a valid exemption to exist.

In regard to ninety-nine of the juvenile probation officers, the Commonwealth claims they are salaried and qualify as either exempt administrators or professionals. The Commonwealth classifies the remaining four as salaried executives. In contrast, the ninety-nine juvenile probation officers argue they are neither salaried nor qualify as exempt administrators or professionals. Three of the remaining four (Hurrin, Carlson, and Locke) concede their primary duties satisfy the "executive" duty exemption, but contend they are not salaried. Carole Grand, the remaining plaintiff, asserts she is neither salaried nor an exempt executive, because her work as a domestic violence case specialist outweighs the time spent on supervisory duties.

The court will first address whether the juvenile probation officers satisfy the "salary basis" test. If not, then the court's inquiry must end, and judgment on liability will be entered in favor of the 103 juvenile probation officers. If so, then the claims of Hurrin, Carlson, and Locke will be dismissed because they qualify as salaried executives. Further, if the "salary basis" test is satisfied, the court will address the claims of the remaining 100 juvenile probation officers in regard to the "duties test."

### I. *Salary Basis Test*

Application of the "salary basis" test to public employees has been and is currently evolving. Traditionally, the "salary basis" is satisfied if an employee regularly receives in each pay period, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of work performed. 29 C.F.R. § 541.118. As amended, any partial day docking after September, 1991, is permissible and does not destroy an otherwise valid exemption.

The juvenile probation officers argue, the "salary basis" test is lost if one of two things occur: they are subject to loss of pay of less than a full

pay period for attendance in court as a witness (see 29 C.F.R. § 541.118(4)) or they are subject to a loss of pay for less than a full pay period through nonsafety discipline (see 29 C.F.R. § 541.118(5)). Although they carried no initial burden of persuasion, the juvenile probation officers presented evidence from Cathy Hurrin that her pay was reduced based on its quantity, from Earl McFarland that he was disciplined for a nonsafety reason, and that Greg Luzik was docked pay for attending this trial as a witness on November 23, 1994. Further, the juvenile probation officers cite the fact DYFS had a disciplinary rule in place that "subjected" them to suspension for less than a work week as grounds for violation of the "salary basis" test.

Based on the evidence presented at trial along with the historic evolution of the application of the "salary basis" test to the public sector, the court finds the juvenile probation officers to be salaried employees. The Commonwealth presented evidence from the accounting manager for DYFS who testified that upon his review of the records none of the complainants had their pay reduced for less than a full day since DYFS came into existence. The testimony of Hurrin is insufficient to rebut and convince the court a violation of the "salary basis" test occurred in her case. There was no testimony as to when the alleged reductions occurred or the nature of the absences. These two factors are significant. For instance, if the reductions occurred after September, 1991, per the amendment there is no violation. As to the nature of the absences, there is no testimony to indicate whether they occurred in a single day or over multiple partial days. The nature of the absences is important because a docking of a day or more for personal reasons, sickness, or disability is permitted (see 29 C.F.R. § 541.118(2), (3)).

Further, the Commonwealth presented evidence that no complainant had received a reduction in pay arising from a disciplinary suspension of less than a full work week. Once again, the DYFS accounting manager testified that upon his review of the records none of the juvenile probation officers received this type of reduction in pay. In fact, the Commonwealth presented documents showing McFarland's suspension took place in November, 1983, prior to the Supreme Court's holding the FLSA applied to the states.

Despite the fact that evidence was presented showing that none of them received a reduction in pay for a disciplinary suspension, the juvenile probation officers argue the mere fact that a policy exists that subjects them to a potential loss of pay destroys any purported salaried status.

Circuits are split as to the treatment of this issue. The Ninth Circuit held the mere existence of such a policy, absent actual application of the policy, destroys salaried status. *Abshire v. County of Kern*, 908 F.2d 483 (9th Cir. 1990). Others have held the mere existence of a policy, absent evidence of actual harm resulting as a consequence of it, does not destroy salaried status. Based on the policies announced by the Department of Labor (DOL) during its revision of the regulations following the *Abshire* decision, this court holds the mere existence of a policy that subjects public employees to a potential reduction in pay that would destroy salaried status, absent a showing that a reduction actually occurred, does not destroy salaried status.

To hold otherwise would fiscally devastate the Commonwealth and result in a windfall to individuals who never experienced a harm. These same reasons prompted the DOL, following the *Abshire* opinion, to proceed with rule making on an expedited basis on the issue of the proper application of the "salary basis" test to the public sector. This process resulted in the September, 1991, amendment to the regulations which modified aspects of the "salary basis" test as it applied to public employers. The DOL recognized in passing these modifications, as does this court, the unique tension between the requirements of the "salary basis" test and holding public employees accountable to taxpayers for the time they actually work. Therefore, the fact the Commonwealth had a disciplinary rule in place that "subjected" the juvenile probation officers to a potential pay reduction does not destroy their salaried status absent evidence that a reduction actually occurred.

The same reasoning applies to Luzik's alleged loss of pay for attending this trial as a witness. On surrebuttal, the Commonwealth showed Luzik had enough annual leave to cover his absence. Because Luzik had adequate leave, any reduction of pay for appearance at trial as a witness is a purely hypothetical scenario.

Accordingly, this court holds the Commonwealth has shown the juvenile probation officers are salaried employees. As such, the claims of Hurrin, Carlson, and Locke are dismissed because they qualify as salaried executives under the FLSA. The court will now turn to an analysis of the "duties test" as it affects the remaining 100 juvenile probation officers. The Commonwealth claims the ninety-nine plaintiffs are exempt administrators or professionals. The court will discuss each exemption in turn, then conclude with a resolution of Carole Grand's status.

## II. *Duties Test*

### A. *Administrative*

The "short test" for the administrative exemption has three components: one, the employee must be paid at least $250.00 a week; two, the employee's primary duty must be "the performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers;" and three, the employee must perform work that requires the exercise of discretion and independent judgment. 29 C.F.R. § 541.2. The juvenile probation officers concede they satisfy elements one and three. As for element two, the juvenile probation officers contend their work relates only to the service and product of the unit. For the administrative exemption to be satisfied, they argue, their primary duties must involve internal management of the unit. In support of their position, they cite several DOL Letter Rulings and *Bratt v. County of Los Angeles*, 912 F.2d 1066 (9th Cir. 1990).

The Commonwealth counters that the complainants are reading the regulations too narrowly. According to the Commonwealth, the exemption is broad enough to include those whose work affects policy or those who are responsible for exercising or carrying it out. 29 C.F.R. § 541.205(c). Additionally, individuals who perform work of substantial importance to the management or operation of the business or the customers of the business qualify for the exemption. 29 C.F.R. § 541.205(c). The Commonwealth claims the juvenile probation officers fall into both categories and as such satisfy the administrative exemption.

Based upon the testimony at trial, the court finds the ninety-nine juvenile probation officers qualify for the administrative exemption. The Commonwealth is correct that the plaintiffs are urging a far too narrow application of the administrative duties test. If the court were to follow the plaintiff's interpretation, only those individuals holding "management" positions would qualify. Clearly, the administrative exemption was not intended to apply to such a limited, select group. For example, in the private sector, bank cashiers, insurance agents, and claim adjusters have been deemed to fall within the administrative exemption. 29 C.F.R. § 541.205(c).

The work of the juvenile probation officers constitutes an application of the policies of the Juvenile and Domestic Relations District Courts, and is of substantial importance to the court system and the juveniles who come into contact with the system. From the moment the juvenile enters the

system until he departs, every decision made by the juvenile probation officers, in the capacity of intake officer, probation supervisor, or parole officer, constitutes an example of implementing the policies of the Juvenile and Domestic Relations District Courts. Just a few examples of policy implementation include, whether to detain or divert the juvenile from the court system, recommendations to the judges on how to handle each case, and setting the terms and monitoring the juveniles on parole. All of these duties impact the size and management of the courts' dockets, and in most instances helps expedite the functioning of the juvenile justice system. Beyond the creation of the laws, which can only be done by the General Assembly, the "running" of the courts' business is essentially docket management and case resolution. Plaintiffs are a critical component of docket management. Without question, the work done by the juvenile probation officers is substantially important to these facets of the courts' business and the juveniles affected by their work.

As to the authority cited by the juvenile probation officers, the DOL Letter Rulings are merely advisory and *may* be used by courts in formulating opinions. As the Commonwealth points out in its trial brief, the Department of Labor has issued inconsistent opinions on this issue. The nature of the inquiry in every instance is fact specific, especially in regard to the duties performed by plaintiffs. For this reason the court rejects the DOL Letter Rulings and the *Bratt* case as controlling authority.

Accordingly, this court holds the juvenile probation officers satisfy the administrative duties exemption test under the FLSA. Because the court has previously held the salary basis test is met as well, the Commonwealth has carried its burden in proving the juvenile probation officers are exempt under the FLSA standards.

Although the Commonwealth has carried its burden, the court will go on to discuss the appropriateness of the professional exemption, so that there are no unresolved issues.

### B. *Professional Exemption*

The "short test" for the professional exemption also has three components. One, the employee must be paid at least $250.00 a week; two, the employee's primary duty must be "work requiring knowledge of an advanced type . . ."; and three, the work must require the exercise of discretion and independent judgment. 29 C.F.R. § 541.3. The juvenile probation officers concede elements one and three. As for element two, the juvenile probation officers argue that because there is no formal degree requirement

to be hired, the job does not require "knowledge of an advanced type." They contend the fact that each juvenile probation officer must receive training on an annual basis after hire indicates holding a degree is not required and insufficient to prepare one for the duties of a juvenile probation officer.

Once again the Commonwealth counters the juvenile probation officers are reading the regulations too narrowly. The professional exemption includes traditional "professions" such as lawyers and doctors, but according to the Commonwealth, the exemption is not confined to traditional professions. The duties of and qualifications for a position determine whether it falls within the professional exemption. 29 C.F.R. § 541.304(a). The work must be predominately intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work. 29 C.F.R. § 541.306(a). In fact, the exemption can apply to individuals who have not obtained a degree. 29 C.F.R. § 541.302(a).

The court agrees with the Commonwealth based on the language of the regulations, which defines the intended parameters of the exemption, and upon the evidence presented during the trial. The court rejects the plaintiff's invitation to pigeonhole the scope of the professional exemption. A written policy requiring a degree is not a prerequisite for the exemption. As the Commonwealth cites in the regulations, the duties and qualifications of a position determine its exempt status.

Upon review of the duties of the juvenile probation officers it is clear their work is "predominately intellectual and varied in character." The diversity of the juvenile population along with the knowledge required to perform the duties of a juvenile probation officer demonstrates the plaintiff's must analyze and interpret information. Each juvenile who comes into contact with the juvenile justice system is different, thereby presenting different facts and circumstances to be weighed by the juvenile probation officer in assessing and making recommendations in regard to the juvenile's case. The testimony of the juvenile probation officers indicates that in order to make the assessment a knowledge of several areas, including normal and abnormal psychology, child development, sociology, child delinquency, and the Virginia Code is necessary.

In addition, the Commonwealth presented evidence that the majority of juvenile probation officers employed, including all of the plaintiffs, hold college degrees. Of those individuals who hold degrees, 88% are in the related field of social science. This fact is due not only to a competitive job market, as plaintiffs argue, but also to selective hiring. The directors of

several CSUs testified that when screening potential candidates for the position of juvenile probation officer, those individuals with degrees, specifically in a related field, had a competitive edge over others. The fact there is no policy requiring that new hires hold a degree is moot in view of the evidence.

The court finds the Commonwealth carried its burden in proving the juvenile probation officers satisfy the professional exemption as well. The only remaining issue to be decided is whether Carole Grand satisfies the executive exemption.

### III. *Executive Exemption as it Pertains to Carole Grand*

The only issue in regard to whether Grand meets the executive duties test is whether her management tasks constitute her "primary duty." Under the regulations, "primary duty" means over 50% of the employee's time. 29 C.F.R. § 541.103.

Grand testified that in addition to her supervisory and management duties, she spends approximately, on average, 3½ hours a day preparing domestic in-take affidavits. In a five day work week, this totals 17.5 hours spent on nonmanagement duties. Over a forty hour work week, at least 22.5 hours are spent on management tasks. Although these figures may fluctuate depending upon the domestic in-take case load, the average indicates Grand spends over 50% of her time in a supervisory/management capacity. Therefore, this court finds Grand satisfies the executive duties test and is properly deemed exempt under the FLSA.

In summation, the court holds the salary basis test is satisfied in regard to each plaintiff. The ninety-nine juvenile probation officers qualify as exempt administrators and the four remaining plaintiffs qualify as exempt executives under the FLSA.