## CIRCUIT COURT OF THE CITY OF RICHMOND

Douglas W. Luzik et al.

v.

Commonwealth of Virginia

November 25, 1997

Case No. HC-1303

BY JUDGE T. J. MARKOW

This case is before the court on remand from the Supreme Court of the United States and the Supreme Court of Virginia. The complainants are one hundred and three Juvenile Probation Officers (JPOs) working in twenty of the Virginia Department of Youth and Family Services Court Service Units who sue for overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-209. The respondent is their employer, the Commonwealth of Virginia. For the reasons stated below, the court holds in favor of the complainants.

### I. *Procedural History*

A Bill of Complaint was originally filed in the Circuit Court of the City of Alexandria on July 1, 1992, by Douglas Luzik, on behalf of himself and fifteen similarly situated JPOs. The complaint alleged violations of the overtime provisions contained in the FLSA. The case was transferred to this court on November 25, 1992. A bench trial on the liability issues was conducted on November 21 and 23, 1994, in order to address (1) whether the JPOs are hourly or salaried employees for purposes of qualifying for

the FLSA exemption ("salary basis test"[1]); (2) whether their work duties are administrative, professional, or executive in nature so as to qualify for the FLSA exemption ("duties test"[2]); (3) whether the absence of a degree requirement preempts the JPOs' exemption status; and (4) whether one of the supervisory officers is an exempt executive.

This court's May 5, 1995, letter opinion [36 Va. Cir. 300] found that the JPOs were salaried employees, based on the court's finding that no *actual* reductions in pay occurred pursuant to the existing policy that "subjects" them to a *potential* reduction in pay for a disciplinary suspension. The JPOs also qualified as FLSA "administrative" employees for purposes of the "duties test" because their work was of "substantial importance" to the courts and those subject to its jurisdiction (e.g., policy implementation and docket management). The court rejected several Department of Labor letter rulings and *Bratt v. County of Los Angeles*, 912 F.2d 1066 (9th Cir. 1990) (administrative exemption requires that employees' primary duties involve internal management or general business operations), as controlling authority. Further, the JPOs were classified as exempt "professionals" because their work was "predominantly intellectual and varied in character." The exemption was not confined to traditional professions and a written policy requiring a degree was not a prerequisite. The evidence demonstrated that selective hiring had produced a majority of JPOs with college degrees anyway. Finally, a supervisory officer was found to qualify as an exempt executive under the FLSA because she spent over 50% of her time in a supervisory/management capacity.

The complainants' Petition for Appeal with the Supreme Court of Virginia was filed on August 4, 1994, and refused on December 20, 1995. A Petition for a Writ of Certiorari was filed with the Supreme Court of the United States on March 19, 1996, presenting three questions related to Department of Labor Letter Rulings under the FLSA in the context of public sector exemption claims. First, whether an actual reduction in compensa-

---

[1] "An employee will be considered to be paid 'on a salary basis' within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a).

[2] Employees engaged in a *bona fide* executive, administrative, or professional capacity are exempt from the minimum wage and maximum hour requirements of the FLSA. 29 U.S.C. § 213(a)(1). The terms executive, administrative, and professional are defined in 29 C.F.R. §§ 541.1 to 541.3.

tion or mere potential for reduction was required in order to destroy salaried status and make the JPOs eligible for overtime pay. Second, whether this court erred in refusing to evaluate the duties test in the manner of several Department of Labor letter rulings and a Ninth Circuit Court of Appeals decision. Third, the complainant challenged the determination that the FLSA exemption does not require a degree or recognition as a profession. The petition was granted on February 24, 1997. Specifically, the high court stated that:

> The judgment is vacated and the case is remanded to the Circuit Court of Virginia, City of Richmond, for *further consideration in light of Auer v. Robbins*, 519 U.S. — (1997).

*Luzik v. Commonwealth*, 36 Va. Cir. 300 (1995), *cert. granted, vacated, and remanded* ("GVR'd)", — U.S. —, 117 S. Ct. 1077 (1997). The Supreme Court of Virginia remanded the case to this court on July 29, 1997. The parties appeared by counsel and arguments were made on November 7, 1997.

The term "vacate" means "[t]o annul; to set aside; to cancel or rescind." *Black's Law Dictionary* 1548 (6th ed. 1990). A "remand" is "[t]he act of an appellate court when it sends a case back to the trial court and orders the trial court to conduct limited new hearings or an entirely new trial, or to take some other further action." *Id*. at 1293. In stating the rationale for issuing a GVR order (grant of certiorari, vacatur, and remand), the Court has held:

> [w]here intervening developments, or recent developments that we have reason to believe the court below did not fully consider, reveal a reasonable probability that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination may determine the ultimate outcome of the litigation, a GVR order is, we believe, potentially appropriate.

*Lawrence v. Chater*, 516 U.S. —, 116 S. Ct. 604, 607 (1996) (per curiam). Thus, this court must review the scope of the *Auer* holding and re-evaluate its earlier findings in the liability phase of the *Luzik* case.

## II. *The* Auer *Decision*

The *Auer* petitioners, numerous St. Louis police officers, sued the re-spondent police commissioners for overtime pay under section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1). The dispute focused on the application of the Secretary of Labor's "salary basis" test for overtime exemption. *Supra* note 1. The petitioners contended that they failed to meet this test and were thus eligible for overtime pay because their compensation could theoreti-cally be reduced pursuant to internal personnel procedures for a variety of disciplinary infractions related to the "quality or quantity" of their work. *Id.* The officers also argued that they failed to satisfy the "duties test" of exemption under the FLSA, alleging that their duties were not of an execu-tive, administrative, or professional nature. *Id.* (citing 29 U.S.C. § 213(a)(1)); *see also* 29 C.F.R. §§ 541.1(a)-(e), 541.2(a)-(d), 541.3(a)-(d).

Justice Scalia delivered the opinion of the unanimous court. First, the court held that the "no disciplinary deduction" component of the salary basis test reflects a permissible reading of the FLSA as applied to public-sector, law-enforcement personnel. *Id.* at 909-910.

Second, the Secretary's "as a practical matter" rule was endorsed by the court. This rule provides that the salary basis test will be satisfied when an employee's compensation may "as a practical matter" be adjusted due to disciplinary problems or other types of infractions. *Id.* at 911. In other words, the standard is violated if there is either an *actual* practice of mak-ing deductions or an employment policy creates a *"significant likelihood"* of them.[3] *Id.* (emphasis added). Justice Scalia embraced the Secretary's interpretation of the salary basis test as set forth in the "as a practical mat-ter" rule, despite the fact that it was announced in an amicus brief to the court. *Id.* at 912. The Court stated that the Secretary should be allowed to construe his regulations broadly.

---

[3] This policy was crafted to avoid "the imposition of massive and unanticipated overtime liability in situations in which a *vague or broadly worded policy* is nominally applicable to a whole range of personnel but is not 'significantly likely' to be invoked against sah-ried employees." *Id.* (emphasis added). The key inquiry is whether employee guidelines or procedural manuals "effectively communicate" that pay deductions are an anticipated form of punishment for employees in the petitioners' category. *Id.* The requisite likelihood of sanction is not established by a one-time deduction of an employee's pay under unusual circumstances. *Id.* at 912.

Finally, the court held that the regulations entitled employers to preserve their employees' exempt status by reimbursing those employees who have been subjected to pay deductions inconsistent with the salary-basis test, so long as the suspect deductions were either inadvertent or premised on reasons other than lack of work. *Id.*

In sum, *Auer* focused on the issue of whether a public employer is exempt from having to pay overtime compensation to its employees. If salary-based compensation is "as a practical matter" subject to reductions, then the exemption is lost and the employer is liable for overtime payments.

## III. *The Case on Remand*

This court will undertake a two-step inquiry on remand in light of *Auer*. The Commonwealth must sustain its burden of proving that (A) each JPO is a salaried and not an hourly employee; *and* (B) that the primary duty of each JPO is administrative, professional, or executive in nature. The complainants will only be exempt from the FLSA if both prongs of this test are met. Failure to meet either prong will result in judgment for the JPOs.

For purposes of the salary basis test, the court is to determine whether the JPOs' compensation may "as a practical matter" be adjusted due to disciplinary matters or other types of infractions committed by public sector employees. This task will involve the construction of the JPOs' procedural mandates to discern whether they "effectively communicate" that pay deductions are an anticipated form of punishment for employees in the petitioners' category (rather than applying to all employees in the organization). Next, although the *Auer* Court never expressly addressed the interpretation of the duties test, its emphasis on the deference owed to the Secretary's broad powers of construction[4] instructs this court to evaluate

---

[4] Justice Scalia declared that "because the salary-basis test is a creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling unless plainly erroneous or inconsistent with the regulations."*Auer*, 117 S. Ct. at 910. The Ninth Circuit has read this statement as instructing the bench to accord deference to clearly articulated regulatory interpretations in the Secretary's Department of Labor Letter Rulings. *Boykin v. Boeing Co.*, No. 96-35482 (9th Cir. Oct. 23, 1997); *see also Graziano v. Society of New York Hospital*, No. 96 Civ. 2716 (HB) (S.D. N.Y. Oct. 15, 1997) (regulatory interpretations in Department of Labor letters constitute controlling decisions).

whether the Department of Labor Letter Rulings are controlling authority on the interpretation of the FLSA administrative, professional, or executive exemption.

A. *Salary Basis Test*

With regard to the disciplinary docking component of the salary basis test, the Virginia statute regarding the general administration of government states that the Department of Personnel and Training shall:

> [e]stablish and administer regulations relating to disciplinary actions; however, no *disciplinary action* shall include the *suspension without pay* for more than ten days of any state employee who is under investigation [for disciplinary matters] without a hearing conducted either by a level of supervision above the employee's immediate supervisor or by his agency head.

Va. Code § 2.1-114.5(11) (emphasis added). The complainants also presented testimonial evidence that the JPOs may be disciplined for non-safety violations, may be docked for attendance at court proceedings, and are subject to deduction for unexcused work absences. Although the actual text of the policy was not introduced into the record, the complainants maintain that the policy was effectively communicated to them as a potential threat.

This is a "vague and broadly worded policy that is nominally applicable" to the entire range of personnel subject to the Department's authority. *See Ahern v. Nassau County*, 118 F.3d 118, 121 (2d Cir. 1997); *Balgowan v. New Jersey Dep't of Transp.*, 115 F.3d 214, 219 (3d Cir. 1997); *Stanley v. City of Tracy*, 120 F.3d 179, 184 (9th Cir. 1997); *Carpenter v. City & County of Denver*, 115 F.3d 765, 766-67 (10th Cir. 1997). The Court Services Units are staffed by a broad range of exempt and nonexempt employees. There is no basis for finding that this policy creates a "significant likelihood" of deductions for disciplinary action or other infractions. The Commonwealth presented evidence that the JPOs have not been subject to *any* disciplinary deductions in the wake of *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) (holding that Congress has power to subject the states to wage and hour regulation). The absence of prior deductions under this policy leads to an inference that future docking is not significantly likely. Further, any reductions in pay for appearance at the original trial on this matter were mooted by the availability of sufficient annual leave to cover Luzik's absence. In sum, the complainants may not

escape the exemption in this manner "as a practical matter" their compensation is not likely to be reduced on the basis of quantity or quality of their work. They are "salaried" employees.

## B. *The Duties Tests*

The outcome under the salary basis test does not preclude the complainants from enjoying the terms of the FLSA, however. The court must also discuss the outcome under the duties test. The respondent claims that ninety-nine of the JPOs are either exempt administrators or exempt professionals, while one of the remaining four complainants is a salaried executive.

### 1. *Administrative Exemption*

The FLSA regulations state that an employee who is paid at least $250 per week may be eligible for the administrative exemption if the employee's primary duty concerns the performance of office or non-manual work directly related to management policies or general business operations of the employer's customers, e.g., exercising discretion and independent judgment. 29 C.F.R. § 541.2(e)(2). Under *Auer*, the court is bound to apply the Secretary's Letter Rulings with regard to the administrative exemption:

> In determining whether activities are "directly related to management or general business operations" of the employer [(the scope of the administrative exemption)], it is important to consider the nature of the "business" itself or, in this case, the function of the governmental agency in question. Inasmuch as the Department has as one of its functions the *providing of probation services*, the probation activities performed by the [juvenile probation officers] would appear to be related more to the ongoing day-to-day "production" operations of the Department than to management policies or "general business operations."

U.S. Dept. of Lab., Wage and Hour Div., Ltr. Rul. (Feb. 16, 1988) (administrative exemption inapplicable to juvenile probation officers); *see also* U.S. Dept. of Lab., Wage and Hour Div., Ltr. Rul. (Apr. 12, 1988); U.S. Dept. of Lab., Wage and Hour Div., Ltr. Rul. (May 9, 1988).

In the instant case, the complainants consist of intake and family counselors. According to a memorandum prepared for the respondent by the Department of Personnel and Training, the specific primary duties performed by intake counselors include performing initial interviews and screening clients brought to the unit; making a legal evaluation of probable cause, jurisdiction, etc.; filing petitions to summon the alleged offender to court; making social evaluations; and deciding whether to detain or refer the client. The family counselors also provide a variety of services to their clients and families: interviewing and evaluating clients; assessing individual maladaptive behaviors and dysfunctional families; conducting specialized counseling; consulting with third parties; determining available community resources; conducting pre-hearing investigations; testifying in court and briefing court personnel; and completing documentation. These duties mirror those discussed in the February 16, 1988, letter cited above.

Evaluating each of these tasks in light of the Letter Rulings, the court finds that the Commonwealth has failed to prove that the intake counselors fall within the scope of the administrative exemption of the FLSA. While the intake counselors meet the salary threshold, their duties relate more to the function of providing probation services to juvenile offenders than to management policies or general business operations of the Court Services Units. There is insufficient evidence to establish that the JPOs may change any internal policies; they do not possess the authority to hire, fire, or make staffing decisions, or to make influential recommendations in management areas. The ninety-nine juvenile probation officers fail to meet the administrative exemption. As a result, these complaints do qualify for the FLSA minimum wage and maximum hour standards despite their classification as salaried employees.

### 2. *Professional Exemption*

The professional exemption will be met if the employee is compensated at a rate of at least $250 per week, her primary duties consist of performing work requiring knowledge of an advanced type of science or learning that is customarily acquired by a prolonged course of specialized intellectual instruction and study (rather than knowledge acquired through a general academic education and training in the performance of routine mental, manual, or physical processes, e.g., consistent exercise of discretion and judgment). 29 C.F.R. § 541.3. The Department of Labor has found that:

[t]he term "professional" is limited to those professions which have a recognized status and which are based on the acquisition of professional knowledge acquired through prolonged intellectual instruction and study. The typical symbol of professional training and the best prima facie evidence of its possession is the appropriate academic degree, and *in the professions a baccalaureate degree is a standard prerequisite*. A "prolonged course of . . . study" has generally been defined to mean a baccalaureate degree or its equivalent which includes a longer intellectual discipline in a particular course of study, as distinguished from a general academic course of study otherwise required for a baccalaureate degree.

U.S. Dept. of Lab., Wage and Hour Div., Ltr. Rul. (May 9, 1988) (emphasis added) (Child Protective Investigator failed professional exemption).

Most but not all of the JPOs possess college degrees. It is not a prerequisite. While testimony indicated that the Commonwealth prefers applicants with social science degrees, the only screening device is good writing and reading skills. Applying the Secretary's opinion, there is no basis for the court to find that the complainants' positions require knowledge of an advanced type of science or learning that is customarily acquired by a prolonged course of specialized intellectual instruction and study. The Commonwealth has not carried its burden in proving that the JPOs satisfy the professional exemption either. Despite their salaried status, the complainants are eligible for overtime pay under the FLSA by virtue of the court's ruling that the JPOs are not exempt professionals.

### 3. *Executive Exemption*

An employee who is compensated at a rate of at least $250 per week may qualify for the *executive* exemption if her primary duties relate to the management of the enterprise in which the individual is employed (or a customarily recognized department or subdivision thereof) and regularly directing the work of two or more full-time employees. 29 C.F.R. § 541.1. This exemption is only an issue with regard to Carole Grand, an intake supervisor. It is undisputed that Ms. Grand regularly directs six employees. The court must decide whether this supervision constitutes her primary duty, i.e., occupies more than 50% of Ms. Grand's time. Counsel for the complainants contends that at least 69.5% of her time is spent on nonmanagement tasks over the course of a year. Testimony at trial provided

that she spends at least 22.5 hours per week on management tasks. The employer has not met its burden of establishing by clear and convincing evidence that Ms. Grand's primary duties relate to supervisory management of her Court Services Unit. She is not exempt from the overtime provisions of the FLSA.

## IV. *Conclusion*

In conclusion, the court holds that the salary basis test is satisfied with regard to each complainant. The ninety-nine JPOs do not qualify as exempt administrators or professionals. Ms. Carole Grand fails to qualify as an exempt executive. An accounting on the damages issue shall be referred to a Commissioner in Chancery pursuant to Chapter 23 of Title 8.01 of the Code.