[No. F030944. Fifth Dist. Feb. 8, 2000.]

SHARYN RENNA, Plaintiff and Appellant, v.
COUNTY OF FRESNO, Defendant and Respondent.

2

**COUNSEL**

Wagner & Jones, Andrew B. Jones and Daniel M. Kopfman for Plaintiff and Appellant.

McCormick, Barstow, Sheppard, Wayte & Carruth, Michael G. Woods and Deborah A. Byron for Defendant and Respondent.

**OPINION**

**VARTABEDIAN, J.**—Appellant, Sharyn Renna, was hired as a board member assistant to Fresno County Supervisor Stan Oken in July of 1992. Appellant was terminated from that position on December 1, 1996. After her termination, appellant filed a complaint against the County of Fresno (hereinafter County) claiming that the County had failed to pay her for approximately 8,344 hours of overtime during her four years of employment. Appellant's complaint charged violations of both state and federal law. The first cause of action alleged the County failed to pay appellant overtime wages in violation of state labor laws. The second cause of action asserted such failure to pay was willful, entitling her to penalties under Labor Code section 203. The third cause of action averred the County's failure to pay appellant overtime wages violated the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) (hereafter FLSA).

The County moved for summary judgment on all three causes of action. The trial court found that appellant was not entitled to overtime wages under state law and, therefore, her first two causes of action were dismissed. The third cause of action was dismissed as well, the trial court finding appellant exempt from the FLSA as a matter of law.

Appellant filed a timely notice of appeal. On appeal, appellant claims that the trial court improperly granted summary judgment as to her third cause of action. We disagree, affirming the trial court's judgment.

## DISCUSSION

A motion for summary judgment is properly granted if all of the papers submitted show there is no triable issue of fact and that the moving party is entitled to a judgment as a matter of law. (*Zavala v. Arce* (1997) 58 Cal.App.4th 915, 925 [68 Cal.Rptr.2d 571]; Code Civ. Proc., § 437c, subd. (c).) ■ On appeal from the grant of summary judgment, the appellate court reviews the record de novo, and independently determines whether the motion was properly granted. (*Zavala, supra,* at p. 925.) The appellate court uses the same standards and rules as the trial court in deciding the propriety of the motion. (*Ibid.*)

A three-step analysis is used in reviewing a motion for summary judgment. (*Zavala v. Arce, supra,* 58 Cal.App.4th at p. 925; *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602 [50 Cal.Rptr.2d 431].) First, the appellate court must identify the issue framed by the pleadings. (*Zavala, supra,* at p. 926; *Brantley, supra,* at p. 1602.) Second, we determine whether the moving party has met its statutory burden of proof. (*Ibid.*) In a case such as this, where the defendant was the moving party, the defendant must have demonstrated through admissible evidence that one or more essential elements of the cause of action cannot be established. (42 Cal.App.4th at p. 1598; Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant has made such· a showing, the burden shifts to the plaintiff to produce evidence that a triable issue of fact exists as to an essential element of the cause of action. (*Zavala, supra,* at p. 926.)

The third and final step is to determine whether the opposing party has demonstrated that a triable issue of fact exists as to the cause of action. (*Zavala v. Arce, supra,* 58 Cal.App.4th at p. 926.) In determining whether the nonmoving party, in this case the plaintiff, has demonstrated the existence of a triable issue of fact, we must strictly construe the moving party's evidence, and liberally construe the opposing party's evidence, with any doubt as to the granting of the motion being resolved in favor of the opposing party. (*Ibid.*)

In the present case, appellant brought a suit against the County arguing that it had violated provisions of the FLSA by failing to compensate appellant for hours worked in excess of 40 hours per week.

Under the FLSA, an employee is entitled to be compensated at the rate of one and one-half times the amount of his/her normal pay for hours worked in excess of 40 hours per week. (29 U.S.C. § 207(a).) In its motion for summary judgment, respondent asserted that appellant was not an "employee" under the FLSA. Under the terms of the FLSA, an "employee" is

defined as "any individual employed by an employer." (29 U.S.C. § 203(e)(1).) However, the FLSA goes on to state that in "the case of an individual employed by a public agency, . . . [employee] means . . . [¶] . . . [¶] . . . any individual employed by a . . . political subdivision of a State, . . . other than such an individual . . . [¶] . . . who is not subject to the civil service laws of the . . . political subdivision . . . which employs him; and [¶] . . . who . . . [¶] . . . [¶] . . . is selected by the holder of [a public elective office of that political subdivision] to be a member of his personal staff. . . ." (29 U.S.C. § 203(e)(2)(C).)

The FLSA does not define the term "personal staff," but the United States Secretary of Labor has promulgated regulations helpful in determining who falls within this exemption. The regulations state in pertinent part:

"(b) The statutory term 'member of personal staff' generally includes only persons who are under the direct supervision of the selecting elected official and have regular contact with such official. The term typically does not include individuals who are directly supervised by someone other than the elected official even though they may have been selected by the official. For example, the term might include the elected official's personal secretary, but would not include the secretary to an assistant.

"(c) In order to qualify as personal staff members or officials in policy-making positions, the individuals in question must not be subject to the civil service laws of their employing agencies. The term 'civil service laws' refers to a personnel system established by law which is designed to protect employees from arbitrary action, personal favoritism, and political coercion, and which uses a competitive or merit examination process for selection and placement. Continued tenure of employment of employees under civil service, except for cause, is provided. In addition, such personal staff members must be appointed by, and serve solely at the pleasure or discretion of, the elected official." (29 C.F.R. § 553.11 (1999); as first promulgated, see 52 Fed.Reg. 2032 (Jan. 16, 1987).)

■ Therefore, under the FLSA, a person employed by a county is not considered an employee if that person (1) is exempt from civil service laws, and (2) serves as a member of an elected official's personal staff.

*Exemption From Civil Service Laws*

■ The first question in the present case is whether appellant was subject to civil service laws of the County. In the trial court, respondent cited sections from the Fresno County Charter empowering the board of supervisors to create an ordinance for a system of civil service, which could provide

exemptions for deputy county administrative officers. (Fresno County Charter, § 44, subd. 2(f).) In addition, the County provided the trial court with a resolution, passed on November 29, 1988, establishing that the position of board member assistant was converted to employee status, and exempted from the civil service laws. Pursuant to Government Code section 25300, the board of supervisors is responsible for providing for "the number, compensation, tenure, appointment and conditions of employment of county employees" and may make such provisions through board resolution. Furthermore, Fresno County Ordinance section 3.08.010(j) specifically exempts deputy county administrative officers from civil service protection. Appellant admitted that board member assistants are classified as deputy county administrative officers by the County. Accordingly, respondent met its burden in proving that appellant was exempt from civil service protection in her employment.

Appellant attempted to rebut the respondent's proof with evidence that she filed a discrimination complaint form with the County after she was terminated in the present case.[1] Appellant argues that because she availed herself of a County procedure, which allowed her to challenge her dismissal that she must have been subject to the County's civil service laws. We disagree.

Appellant bases her conclusion on the definition of civil service laws found in title 29 Code of Federal Regulations section 553.11(c) (1999). Appellant contends that since this section defines civil service laws as "a personnel system established by law which is designed to protect employees from arbitrary action, personal favoritism, and political coercion"; because she filed a complaint alleging political coercion and the County provided a response to this complaint, she must necessarily have been covered by the civil service laws. Not so. The mere fact that the County responded to appellant's complaint regarding her employment does not provide evidence that she was indeed provided civil service protection. It only shows that the County utilized a procedure to respond to complaints of discrimination in employment. Appellant fails to refute proof she was not protected by civil service laws.

As the federal regulations make clear, civil service laws both protect employees from "arbitrary action, personal favoritism, and political coercion" and use "a competitive or merit examination process for selection and

---

[1]Respondent objects to this evidence on appeal, claiming it was untimely filed. We need not consider respondent's evidentiary objections because we find that even considering all of appellant's evidence it was still insufficient to survive summary judgment.

In addition, respondent objects to issues raised for the first time in appellant's reply brief. It is well settled that issues raised for the first time in the reply brief will not be considered on appeal. (*Westside Center Associates v. Safeway Stores 23, Inc.* (1996) 42 Cal.App.4th 507, 529 [49 Cal.Rptr.2d 793].) Therefore, we will not consider such issues here.

placement" of employees. (29 C.F.R. § 553.11(c) (1999).) Appellant has made no attempt to show that she was subject to the latter. In addition, the definition of civil service found in the regulations provides that employees shall not be terminated except for cause. (*Ibid.*) However, in the present case, appellant admitted that she served "at the will" of the county administrative officer. Therefore, by appellant's own admission, she could not be subject to the County's civil service laws.

*Personal Staff*

■ In addition to showing that appellant was not subject to the County's civil service protections, respondent must show that appellant was a member of Supervisor Oken's personal staff in order to establish that appellant was not subject to overtime provisions of the FLSA. Exemption from civil service protections is but one element of being employed as a member of personal staff. (See 29 C.F.R. § 553.11(c) (1999), quoted *ante.*)

Appellant contends that the trial court erred in the present case by applying the wrong standard in determining if appellant fell within the personal staff exemption. Citing *Bratt v. County of Los Angeles* (9th Cir. 1990) 912 F.2d 1066, she argues that respondent must prove that appellant meets every requirement within the regulation in order to support a finding that she is exempt from FSLA protection. However, *Bratt* fails to help appellant here. The court in that case was concerned with whether or not an employee fell within an *administrative* exemption of the FLSA. (*Id.* at p. 1068.) That section provides an employee is exempt from minimum wage and maximum hour requirements if the employee is "employed in a bona fide . . . administrative . . . capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary . . . ." (29 U.S.C. § 213(a)(1).) Under this statute, the Secretary of Labor is required to define the categories. Indeed, the regulation pertaining to that section set out five requirements that must be met in order to consider the employee as employed in a bona fide administrative capacity. (*Bratt v. County of Los Angeles, supra,* 912 F.2d at pp. 1068-1069.)

In contrast, the personal staff exemption is neither defined by FLSA nor is the Secretary of Labor required thereunder to define categories. We thus disagree with appellant's assertion that the regulation in this case sets out the *exclusive* test for determining whether a person falls within the personal staff exemption. The regulation does not by itself establish a test for determining whether a person falls within the personal staff exemption, although it does provide some guidance. As we shall further explain, the case law

applied by the trial court is consistent with and explanatory of the regulation in question.

When interpreting whether a person is part of an elected official's personal staff under the FLSA, courts have looked to cases interpreting an identical provision under title VII of the Civil Rights Act of 1965 (42 U.S.C. § 2000e(f)).[2] (*Nichols v. Hurley* (10th Cir. 1990) 921 F.2d 1101, 1103.) In *Nichols*, the United States Court of Appeals, Tenth Circuit, was presented with the issue of whether deputy sheriffs and undersheriffs constituted members of the sheriff's personal staff under the FLSA. The court examined the above regulation as well as considered cases applying the personal staff exemption in the title VII context. The court concluded that a list of factors, set out in *Teneyuca v. Bexar County* (5th Cir. 1985) 767 F.2d 148, adequately allowed the court to evaluate whether a person falls within the personal staff exemption. (*Nichols v. Hurley, supra*, at p. 1110.)

In *Teneyuca v. Bexar County*, the Fifth Circuit set out a number of factors for determining whether a person falls within the personal staff exception to title VII's definition of an employee. The factors include: "(1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position." (*Teneyuca v. Bexar County, supra*, 767 F.2d at p. 151.)

Even though *Teneyuca* concerns title VII, the court there interpreted the same terminology, "personal staff," and we see no reason why the interpretation of the terminology here should not involve the same factors. We are satisfied the *Teneyuca* factors adequately reflect the meaning of "personal staff" as set forth in the regulation before us. Consequently, we find it appropriate to apply the *Teneyuca* factors to the question of whether appellant was a member of Supervisor Oken's personal staff, contrary to appellant's claim the trial court wrongly applied this case law.

---

[2]The exemption found within title VII states: "The term 'employee' means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff . . . . The exemption set forth in the preceding sentence shall not include employees subject to the civil service laws of a State government, governmental agency or political subdivision." (42 U.S.C. § 2000e(f).)

As stated above, the Secretary of Labor has promulgated a regulation concerning the term "personal staff" indicating that the term "generally includes only persons who are under the direct supervision of the selecting elected official and have regular contact with such official. The term typically does not include individuals who are directly supervised by someone other than the elected official even though they may have been selected by the official." (29 C.F.R. § 553.11(b) (1999).) This definition is taken into account by the *Teneyuca* factors which require consideration of whether the elected official has plenary powers of appointment and removal, whether appellant is personally accountable to only that elected official, whether the elected official exercises a considerable amount of control over the position and considering the actual intimacy of the working relationship between appellant and the elected official. (*Teneyuca v. Bexar County, supra,* 767 F.2d at p. 151.)

In enunciating the six factors to consider in determining whether a person falls within the personal staff exemption, the court in *Teneyuca* explained that the factors were not intended to be exhaustive. (*Teneyuca v. Bexar County, supra,* 767 F.2d at p. 152.) Rather, the factors are helpful in determining the nature and circumstances of the employment relationship. (*Ibid.*) The court went on to explain that "the highly factual nature of the inquiry necessary to the determination of the 'personal staff' exception does not lend itself well to disposition by summary judgment." (*Ibid.*) However, summary judgment was proper in that case because the plaintiff failed to establish any material factual conflict sufficient to defeat the summary judgment motion. (*Id.* at p. 153.) As appellant points out, the personal staff exemption must be construed narrowly. (*Nichols v. Hurley, supra,* 921 F.2d at p. 1104.) Keeping this in mind, we will now address each of the factors.

The first factor is whether Supervisor Oken had plenary powers of appointment and removal over appellant. Respondent provided the trial court with a declaration from Oken stating that he had the sole discretion to select his assistant, that he has the authority to recommend removal of a deputy under his direct supervision, and that the position was an at will position. In addition, respondent provided a job description for appellant's position, which stated that board member assistants serve at the will of the county administrative officer. Respondent also produced the County's personnel and pay policies, which demonstrated that the county administrative officer could appoint, suspend or remove a board member assistant "only with the concurrence of the Board Member Served." This was clarified by the declaration of William Randolph, the county administrative officer, which stated that, while the county administrative officer was technically empowered to terminate the board member assistant's employment, board member

assistants serve at the pleasure of the board member and could only be fired with the board member's approval.

Furthermore, appellant acknowledged in her deposition that Oken offered appellant the position after interviewing her. She also admitted she understood she would no longer hold the job if Oken were not reelected. Oken stated in his declaration that appellant was terminated by Mr. Randolph at Oken's request.

Attempting to rebut this evidence, appellant pointed to her job description, which includes language that board member assistants serve at the will of the county administrative officer. Consistent with this language, asserts appellant, it was Randolph, not Oken, who terminated her employment. However, these facts are insufficient to rebut the fact that it was Oken who held the *power* of appointment and removal. Appellant admitted county policy provides the county administrative officer may appoint or remove a board member assistant *only* with the concurrence of the board member served by the assistant. Appellant never presented any evidence to contradict the fact that it was Oken who actually held the power to hire and fire appellant.

Appellant additionally argues Oken's decision regarding appellant's termination could have been superseded by a county personnel procedure, which could have resulted in her reinstatement. However, appellant presented no evidence to that effect. Appellant only produced a copy of a discrimination complaint form she filed with the County and the County's response to that complaint, stating, in effect, that it did not find appellant's termination was based on discrimination or other nonmerit factors. Appellant offered no evidence that this procedure could have somehow resulted in her reinstatement. Indeed, the relief appellant requested on her complaint was for continued insurance coverage and for compensation for earned hours not used. Therefore, we find appellant failed to refute the fact that Oken had sole power of appointment and removal.

The second factor is whether appellant was personally accountable only to Mr. Oken. In support, respondent presented Oken's declaration, which stated that appellant worked directly for him and was under his supervision and control. In addition, he stated that appellant did not work for any other supervisors. Appellant's job description stated that board member assistants were to provide services to other board members when they were not directly occupied by their supervisor, although this was to be a collateral service. Mr. Randolph stated in his declaration that board member assistants were required to answer county telephones one day per week and that they were required to act as a backup, answering telephones for an additional day

each week. However, the board member assistants were still under the supervision of their board member.

Responding to this evidence, appellant stated in her declaration that she did indeed work for other board members at their request. Specifically, she worked with Supervisor Levy on a project and was required to amend board resolutions to other board member's satisfaction. In addition, she stated that she was required to answer telephones one day per week and act as a backup for an additional day. Furthermore, she stated that she had been reprimanded by the county clerk for moving county furniture and modifying Mr. Oken's chair at his request, and she had job performance evaluations signed by Sherry Greenwood, clerk to the board.

In *Nichols v. Hurley*, the court explained this factor. There, deputy sheriffs and undersheriffs claimed that they had to answer to the district attorney along with the sheriff, as well as the bonding company and the board of county commissioners, when they made errors in carrying out their duties. (*Nichols v. Hurley, supra*, 921 F.2d at p. 1113.) The court explained that in "the context of the personal staff exception, being personally accountable to someone other than the elected official means that the employee does not serve solely at the pleasure of the elected official, but of others as well." (*Ibid.*) In that case, the court found that the plaintiff failed to establish that anyone other than the sheriff "had any control or influence over plaintiff's duties, powers, performance, or actual service." (*Ibid.*) The plaintiffs presented no evidence that they were accountable to anyone but the sheriff.

In the present case, appellant did present some evidence that she was held to answer to others. This placed in issue whether she also served at the pleasure of others, even though she was primarily accountable to Supervisor Oken.

As to the third factor, whether appellant represented Oken in the eyes of the public, respondent produced appellant's job description, which stated that board member assistants are to represent the board member with the public. In addition, appellant's job description required her to handle important contacts on the telephone and in person. Appellant stated in her deposition that she would stand in for Oken at evening meetings. Appellant also admitted she handled constituent complaints on behalf of Mr. Oken. Indeed, appellant acknowledged Oken had told her during her interview that she would be his representative to the community as a board member assistant. Furthermore, Oken declared he expected appellant to represent him in the eyes of the public and to express his views when dealing with the public. These facts establish that appellant represented Supervisor Oken in the eyes of the public.

Appellant attempted to rebut this evidence by declaring she did not have the same authority in her position as Oken; she had no policymaking or legislative powers. Appellant claims this factor is met only where the employee can "step into the shoes" of the public official.

To support this assertion, appellant relies on *Ramirez v. San Mateo County* (9th Cir. 1981) 639 F.2d 509. In *Ramirez*, the plaintiff brought suit pursuant to title VII claiming that the district attorney failed to hire him as a deputy district attorney because of his race. The court found no error in dismissing the plaintiff's complaint because deputy district attorneys were considered part of the district attorney's personal staff. (*Ramirez* at pp. 512-513.) The deputy district attorney had the power to "represent the district attorney in legal proceedings and in the eyes of the public." (*Id.* at p. 513.) Appellant further relies on *Wall v. Coleman* (S.D.Ga. 1975) 393 F.Supp. 826, where the plaintiff alleged that she was not hired as an assistant district attorney because of her sex in violation of title VII. The court in that case found that an assistant district attorney was part of the district attorney's personal staff partly because the electorate evaluates the district attorney based on the performance of his assistants. (*Wall* at pp. 830-831.) The court also noted the district attorney may, by law, delegate as much authority and duties to his assistants as he wishes to delegate. (*Id.* at p. 831.)

While both of these cases mention that the person holding the position in question had some of the same powers as the elected official, neither of these cases requires such a finding to establish the personal staff exemption. While these facts may support a finding that a deputy or assistant falls within the exemption, nowhere is it stated that holding the power to exercise the superior's authority is required. Nothing in the statute itself indicates the Legislature intended policymaking powers to be a necessary element of a personal staff position. In fact, FLSA has separate and distinct exemptions for people who are appointed by the official on a policymaking level, and for people who are immediate advisors to the official. (29 U.S.C. § 203(e)(2)(C)(ii)(III) and (IV).)

Both *Ramirez* and *Wall* were decided before *Teneyuca;* since *Teneyuca*, *Nichols v. Hurley* addressed a similar issue, yet in a context more analogous to the present case because the parties in question *lacked* policymaking authority. Similar to appellant, the deputy sheriffs there claimed the lack of their superior's authority meant they were not a part of the sheriff's personal staff; the deputies could not hire employees, order increased patrols, order investigations, or buy equipment. (*Nichols v. Hurley, supra,* 921 F.2d at p. 1113.) The court rejected the deputies' argument, finding the plaintiffs "need not have the administrative powers of the sheriff to represent him in the eyes of the public or be in a confidential relationship with him." (*Id.* at p. 1114.)

Likewise here, appellant need not possess all the powers of Supervisor Oken in order to represent him in the eyes of the public. Appellant did not contest the fact that she answered constituent complaints and was expected to express Oken's views to the public. Given such duties, she can hardly contend that she did not represent Oken in the eyes of the public.

Whether Oken exercised a considerable amount of control over appellant's position constitutes the fourth factor. Oken declared he was the one to supervise appellant's work, he was the only one to evaluate her work, appellant worked under his exclusive control and he was responsible for delegating to her such duties as he felt were appropriate. Respondent additionally offered the following provisions from appellant's job description: a board member assistant acts as an assistant to the board member and performs the member's duties under the direction of the board member. The experience required for the job consisted of "[e]xperience and/or education acceptable to the appointing Board member." Appellant admitted she took direction from Oken in performing her job. These facts establish that Oken had considerable control over appellant's position.

In rebuttal, appellant essentially relies upon the same facts she asserted against the "personally accountable to Supervisor Oken" factor herein: work she performed for other board members, the county clerk's reprimand, the evaluations signed by the board clerk, and her general telephone duties. Appellant places heavy emphasis on the fact that she was occupied two days a week doing county business. She also produced a memorandum, written by Oken and addressed to Randolph, wherein Oken complained appellant's telephone duties one day a week made it difficult for her to complete her work.

While these facts tend to show that appellant did work for others in addition to Supervisor Oken, appellant did not provide the trial court with evidence that disputed the amount of control Oken had over appellant's position. While it is undisputed that appellant was required to answer telephones one day a week, it was also undisputed that appellant was under Oken's supervision even while performing this task. In addition, any work she performed for other supervisors was designated in her job description as "collateral" service when not directly occupied by Oken. While appellant provided some evidence that others had some influence over her position, she did not provide evidence to rebut the fact that Oken had a "considerable amount" of control over the position. Therefore, appellant did not present evidence sufficient to rebut this factor.

The fifth factor considers the level of appellant's position in the chain of command. When arguing this factor below, the parties mistakenly analyzed

this factor with reference to Supervisor Oken's position in the chain of command, rather than appellant's. Both parties concede on appeal that it is appellant's, not Mr. Oken's, position which must be evaluated. Because the parties misinterpreted this factor below, no evidence was presented regarding appellant's position within the chain of command. Therefore, this factor is not met.

The sixth and final factor is the actual intimacy of the working relationship between appellant and Mr. Oken. This is the most important factor in the analysis (see *Baker v. Stone County, Mo.* (W.D.Mo. 1999) 41 F.Supp.2d 965, 985; *Owens v. Rush* (10th Cir. 1981) 654 F.2d 1370, 1375 [Congress intended the personal staff exception to apply "only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official"]). The Code of Federal Regulations provisions emphasize the importance of this factor. The regulations state that personal staff members include people "who are under the direct supervision of the selecting elected official and have regular contact with such official." (29 C.F.R. § 553.11(b) (1999).) A personal staff member could include someone such as the elected official's personal secretary. (*Ibid.*)

Here, respondent provided the court with appellant's deposition, in which she admitted that she was required to maintain a "confidential relationship" with Supervisor Oken, she was required to be loyal to him, he told her that he was looking for a "partner," and she received assignments from him which were confidential and sensitive in nature. Furthermore, appellant's job description stressed the intimate working relationship between the board member and his assistant. It stated, "Assignments are of a confidential and sensitive nature and require good rapport and close working relationship with the Supervisor" and goes on to state that because "of the sensitive nature of this class, incumbents must also possess active loyalty, effective interpersonal relationships at all organizational levels and with the public, and knowledge and understanding of the Supervisor's objective and priorities."

Appellant argues that this factor is too vague for consideration. We disagree. As the job description and appellant's deposition testimony demonstrate, she was employed in a highly intimate working relationship with Supervisor Oken. Appellant attempts to downplay this factor by emphasizing her clerical and secretarial duties. However, the regulations promulgated by the Secretary of Labor recognize that a secretary may occupy a personal staff position. (29 C.F.R. § 553.11(b) (1999).)

The undisputed evidence here demonstrates appellant's position was the type contemplated by the Legislature as within the official's personal staff.

Appellant worked directly with the elected board member who selected her. She was his sole assistant. In her position, she was required to handle sensitive and confidential matters including representing him in contacts with his constituents. Furthermore, respondent conclusively established four of the six *Teneyuca* factors; appellant was unable to demonstrate that any triable issue of fact remained on any of those factors. While there was no proof of the chain-of-command factor and there was factual dispute as to the factor concerning sole personal accountability, we cannot say that any triable issue of a material fact remains. We say this because even if a trier of fact determines appellant was in some part accountable to persons other than Supervisor Oken and she was not solely subordinate to Oken in terms of chain of command, the indisputability of the other four factors renders these other two factors no longer material for our purposes. As *Nichols* points out, a defendant's proof of three or four of the factors, factually unrebutted by plaintiff, is sufficient to establish on summary judgment the plaintiff-employee's position was a member of the elected official's personal staff; such was the case in *Teneyuca.* (*Nichols v. Hurley, supra,* 921 F.2d at p. 1111.) For these reasons, we find the trial court did not err in finding that appellant fell within the personal staff exception to the FLSA and was therefore exempt from its overtime provisions. Summary judgment was properly granted.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Dibiaso, Acting P. J., and Buckley, J., concurred.