Judith MARBURGER, Plaintiff,

v.

UPPER HANOVER TOWNSHIP and Upper Hanover Township Board Of Supervisors, Defendants.

No. 00–CV–6492

United States District Court, E.D. Pennsylvania.

Feb. 4, 2002.

Lawrence Sager, Sager & Sager Associates, Pottstown, PA, for Plaintiff.

Phyllis D. Haskin, Philadelphia, PA, George T. McCool, Jr., Phyllis D. Haskin, Wright and O'Donnell, Conshohocken, PA, Sidney L. Gold, Lovitz & Gold, Philadelphia, PA, for Defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiff Judith Marburger sued Upper Hanover Township ("the Township") and the Upper Hanover Township Board of

Supervisors ("the Board") alleging she was sexually harassed by her manager, the Township Secretary, who was also an elected member of the Board. After the Township Secretary resigned, Plaintiff contends she assumed his duties for months and was discriminatorily denied a pay increase commensurate with her new level of responsibility. She alleges she was retaliated against when she was denied a formal promotion to the Township Manager position and eventually constructively discharged.

Defendants moved summary judgment on all of Plaintiff's federal and state statutory claims and state common law claims. Thereafter, Defendants moved to dismiss Plaintiff's federal action for lack of subject matter jurisdiction. Specifically with regard to jurisdiction, Defendants contend that the Township employs less than 15 employees and is therefore not an "employer" under Title VII of the Civil Rights Act (Title VII), as defined in 42 USC § 2000e(b). Defendants further state that Plaintiff was not an "employee" as defined under the Equal Pay Act (EPA) of the Fair Labor Standards Act, 29 USC § 203(e)(2)(C), inasmuch as she was an appointee of the elected Board of Supervisors of the Township, a public agency, serving at the Board's pleasure (i.e., not as a civil servant) as its personal staff member, directly involved in policymaking and legislative functions.

Because we now find that Plaintiff is not covered under either Title VII or the EPA for the reasons Defendants assert, we must dismiss Plaintiff's federal claims. Consequently, she has no basis for asserting federal subject matter jurisdiction, and we must remand her remaining claims to state court. We may not discuss the merits of any of these remaining claims, since without subject matter jurisdiction, we maintain no authority in this matter.

## DISCUSSION

### I. Subject Matter Jurisdiction

■■■■ Federal procedural guidelines dictate that we may consider jurisdiction at any time.[1] Fed.R.Civ.P. 12(b)(1), 12(h)(3); *In Re: Orthopedic "Bone Screw" Products Liability Litigation* 132 F.3d 152, 155 (3rd Cir.1997) *("Bone Screw")* citing *Underwood v. Maloney*, 256 F.2d 334 (3d Cir.), cert. denied, 358 U.S. 864, 79 S.Ct. 93, 3 L.Ed.2d 97 (1958). If we determine that a case before us lacks subject matter jurisdiction, we have no authority under the Constitution to decide the case on its merits. *Bone Screw*, 132 F.3d at 155. Where a case has been removed from state court, like this case, it must be remanded without prejudice if jurisdiction is lacking. *See Bradgate Associates v. Fellows, Read & Associates*, 999 F.2d 745, 750–51 (3d Cir.1993) (finding that, where the district court lacks subject matter jurisdiction, it must remand a removed state court case). Plaintiff bears the ultimate burden of persuading us that we have subject matter jurisdiction over her case under Rule 12(b)(1). *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3rd Cir.), cert. denied, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

### II. Title VII Jurisdiction

■■■■ A plaintiff may only raise Title VII claims against a defendant if that defendant is an "employer" as defined by the statute. 42 USC § 2000e(b). Defendants claim that Upper Hanover Township is not a Title VII-qualified "employer," defined as follows: "The term 'employer' means a

---

1. Our prerogative is so extensive in this area that the Third Circuit has held we may even consider jurisdiction after a jury trial. *Meritcare Inc. v. St. Paul Mercury Insurance Co.*, 166 F.3d 214, 217 (3d Cir.1999), citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938).

person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 USC § 2000e(b). Specifically, Defendants affirm that the Township employed between four and five employees during the relevant period.

At oral argument before us on January 29, 2002, Plaintiff conceded that the Township employed less than fifteen employees.[2] Hence, Plaintiff's claims under Title VII must be dismissed. *Colorado Springs Amusements, Ltd. v. Rizzo*, 524 F.2d 571, 576–577 (3rd Cir.1975) ("It is neither alleged nor in any way suggested that any of the owners employ [fifteen or more] persons. There is thus no violation of the Civil Rights Act.").

■■■■ Plaintiff contends that even if jurisdiction does not exist with respect to the Township itself, she can still maintain a Title VII suit against members of the Township Board of Supervisors in their official capacities under *Verde v. City of Philadelphia*, 862 F.Supp. 1329 (E.D.Pa. 1994). Plaintiff misunderstands *Verde*, which in any event is not binding upon us. The *Verde* decision holds, "A suit against a defendant in his official capacity ... 'generally represents only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 1332, citing *Kentucky v. Graham*, 473 U.S. 159, 165–166,105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). *See also Duffy v. Southeastern Pennsylvania Transp. Co.*, 1995 WL 299032 at *2 (E.D.Pa.1995) ("The official-capacity claims against Sharpe and Evans, in contrast to the personal-capacity claims, are simply another way of asserting claims against SEPTA itself."). Thus, Plaintiff's claims against the Township provide the foundation necessary to her claims against the Board members in their official capacities. The latter must likewise be dismissed since the Township, not a Title VII "employer," is not within our jurisdiction.[3]

**2.** Though Plaintiff sues the Township's Board of Supervisors separately, we judge jurisdiction with respect to the Township and its Board in unison. The record suggests that the Board employed no one apart from those, like Plaintiff, employed by the Township. Moreover, we consider the Board a redundant party in this case, following the District Court's decision directly on point in *Satterfield v. Borough of Schuylkill Haven*, 12 F.Supp.2d 423, 431 (E.D.Pa.1998). The *Satterfield* court, following *Glickstein v. Neshaminy School District*, 1997 WL 660636, *4 (E.D.Pa.) (federal and state discrimination claims against school board redundant when district is properly named defendant), found "that the Borough Council is a redundant party in this case, as the Borough itself (a named Defendant), would ultimately be liable for any judgment entered against the Borough Council. [Citation.] Therefore, we will grant this portion of the Defendants' [Summary Judgment] Motion and dismiss all claims against the Defendant Borough Council. In doing so, we wish to make it clear that this dismissal in no way prejudices the right of the Plaintiff to pursue his claims based upon the misconduct of the Borough Council. However, since the Borough itself will be directly liable for any misconduct on the part of the Borough Council, the inclusion of both entities as Defendants is unnecessary."

**3.** Defendant also asserts that Plaintiff failed to exhaust her administrative remedies with respect to the Board members in their official capacities. We disagree. Plaintiff complained of retaliation by the Township Supervisors in her December 6, 1999 administrative discrimination charge and an investigation into their conduct would have reasonably been expected to grow out of her charge. *See Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) ("The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."), called into doubt on other grounds in *Dillon v. Coles*, 746 F.2d 998 (3rd Cir.1984). Moreover, the members of the

As Plaintiff notes, we must give effect to explicit statutory language (*Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 907, 909–910 (3rd Cir.1990)) and must avoid construction of such language that would lead to "absurd or unreasonable results." *Robert T. Winzinger, Inc. v. Management Recruiters, Inc.*, 841 F.2d 497, 500 (3rd Cir.1988). It would be absurd to allow Title VII suits against individuals in their official capacities when the organizations they represent are clearly not covered by the statute. Such a course of action would essentially disembowel Title VII's fifteen employee jurisdictional minimum. The law is clear: plaintiffs may not maintain Title VII suits against entities or agents of those entities in their official capacities where such entities employ less than fifteen people. All of Plaintiff Marburger's Title VII claims are accordingly dismissed.

## III. EPA Jurisdiction

The EPA exists within the Fair Labor Standards Act (FLSA) and its jurisdictional parameters are those of the FLSA generally, as outlined in 29 USC § 203(e). 29 CFR § 1620.1(a) (1987); 29 CFR § 800.105 (1984). The Township, a political subdivision of the Commonwealth of Pennsylvania, invokes 29 USC § 203(e)(2)(C), defining "employees" protected under the FLSA:

> (2) In the case of an individual employed by a public agency, such term means. . . .

(C) any individual employed by a State, political subdivision of a State, or an interstate governmental agency, other than such an individual—

(i) who is not subject to the civil service laws of the State, political subdivision, or agency which employs him; and

(ii) who—

(I) holds a public elective office of that State, political subdivision, or agency,

(II) is selected by the holder of such an office to be a member of his personal staff,

(III) is appointed by such an officeholder to serve on a policymaking level,

(IV) is an immediate adviser to such an officeholder with respect to the constitutional or legal powers of his office, or

(V) is an employee in the legislative branch or legislative body of that State, political subdivision, or agency and is not employed by the legislative library of such State, political subdivision, or agency.

Thus, under section 203(e)(2)(C), Plaintiff Marburger was an EPA-covered "employee" only if she was a civil servant, or if she otherwise worked for a public agency but was not a personal staffer to an elected official or otherwise appointed by elected officials to a policymaking or legislative position.

Board in their official capacities identify completely with the Board as an entity, which we have equated with the Township—the named Respondent to Plaintiff's administrative charge. *See*, e.g., *Duffy v. Southeastern Pennsylvania Transp. Co.*, 1995 WL 299032 at *2 ("Because there is complete identity between the named party, SEPTA, and the unnamed defendants when sued in their official capacities, plaintiff's failure to name Sharpe and Evans as respondents in her EEOC charge does not preclude her from asserting official-capacity claims against these defendants."). On the other hand, Plaintiff never asserted claims against the Board members in their individual capacities, apparently believing "that individuals may be liable in their official capacities but cannot be personally liable." Thus, we need not comment on whether Title VII suits against these individuals could have been maintained. At this point, such actions would be time-barred.

## A. Exemption from Civil Service

■ Though the question of whether Plaintiff is an "employee" under the EPA is a question of federal law, state law applies in describing the position in question, including its duties and the means of hiring, supervising and discharging the job-holder. *Owens v. Rush*, 654 F.2d 1370, 1375 (10th Cir.1981); *United States v. Gregory*, 582 F.Supp. 1319, 1321 (W.D.Va. 1984), rev'd on other grounds, 818 F.2d 1114 (4th Cir.), cert. denied, 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99 (1987). Plaintiff admitted at oral argument that Upper Hanover Township was a Second Class Township under Pennsylvania law, and that such entities in Pennsylvania do not have Civil Service Commissions. After Plaintiff initially reported sexual harassment to the Township, she responded to questions under oath, acknowledging that hers was not a civil service job. Plaintiff's Response to Summary Judgment, Exhibit E, 5:25–6:2.

Defendants further contend that because Plaintiff was appointed to serve as Township Treasurer/Assistant Secretary at the pleasure of the elected Township Board of Supervisors, she was not subject to Township Civil Service Laws. Plaintiff, on the other hand, argues that although she was not employed pursuant to the mandates of a Civil Service Commission, she was nonetheless effectively a civil servant because she was employed pursuant to state statute, was subject to the Township's personnel policies, received employee benefits, had hours controlled by the Township, received performance appraisals from the Township Manager and received an employee grievance hearing.[4]

■ Being "subject to the civil service laws" of Pennsylvania for the purpose of conferring "employee" status under the FLSA is not an abstract concept explored on a case-by-case basis, as Plaintiff would define it. Pennsylvania law specifically provides for civil service positions. Thus, being a civil service employee is in this respect like being pregnant: one either is or is not pregnant, and one either is or is not a civil service employee. No outward resemblance of pregnancy makes one more or less pregnant, just as no civil service likeness makes one more or less a civil service employee.

The parties stipulated at oral argument that Plaintiff was appointed as the Treasurer and Assistant Secretary of the Township. Under Pennsylvania's Second Class Township Code, 53 PS §§ 65701–65704, the Upper Hanover Township Treasurer is appointed to "serve at the plea-

---

4. Plaintiff also argues that the federal definition of "civil service employee" should be applied in order that Plaintiff may be considered an "employee" within the EPA's ambit. The federal definition Plaintiff provides reads as follows: "The 'civil service' consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services." 5 USC § 2101(1). Despite the seemingly broad language of "all appointive positions," it is well-established that the federal civil service includes those "whose compensation was restricted by law, and who, being circumscribed in their means of subsistence by the arbitrary operation of law, could look only to the law for the bettering of their condition." *Baker v. U.S.*, 4 Ct.Cl. 227 (Ct.Cl. 1868). The purpose of the civil service as initially conceived was "to make its civil officers independent and respected—a lofty policy designed to secure, and which did secure for the civil service respectable talents and irreproachable character." *Id.* Plaintiff does not allege that her employment was independent of the elected Board of Supervisors nor that her compensation was restricted by law. On the contrary, the record indicates that her employment was *dependent* upon the Board ("at the Board's pleasure") and her compensation was left up to the Board's prerogative. Thus, even if the federal definition were applicable, Plaintiff could not be considered a civil service employee.

sure of the Board of Supervisors," with compensation set by the Board, required to "Pay out all moneys of the township only on direction" by the Board. Likewise, under 53 PS §§ 65801–65803, the Township Secretary is appointed "to serve at the pleasure" of the Board with compensation set by the Board.

The Pennsylvania Supreme Court held in *Tegzes v. Bristol Tp.*, 504 Pa. 304, 309, 472 A.2d 1386 (1984) that "Civil Service provisions regulating appointments must be complied with" and that "a municipality and its officers cannot substitute their own method [of termination] in place of the prescribed procedure" concerning Civil Service employees. The *Tegzes* court concluded that "civil service laws cannot be obviated by agreement." *Id.* By implication, we believe that a Second Class Township and its officers also cannot create civil service appointments by agreement. As the Supreme Court held, the definitions of such positions are governed only by the Commonwealth's statutory provisions. *See also McGrath v. Staisey*, 433 Pa. 8, 12, 249 A.2d 280 FN*, 433 Pa. 8, 249 A.2d 280 (1968) ("It is an accepted view in this state that no employee in the civil service may be appointed, transferred, reinstated, promoted, or discharged in Any manner or by Any means other than those specified by statutes regulating civil service."). Plaintiff's position was not a statutorily-created Civil Service position, and she can therefore not be considered a civil service employee under the FLSA.

Even if Upper Hanover Township and Plaintiff Marburger could have agreed to create a civil service position that would have imbued Plaintiff with EPA protection, the Township vehemently denies having done so and we do not find any similarity between Plaintiff's position and a civil service position. In Pennsylvania, the Civil Service is "a system wherein employees in public service will be selected on the basis of their qualifications and fitness and whereby competent and faithful service will be rewarded by making the employees' tenure of office secure while they behave themselves well." *In re Geis*, 341 Pa. 413, 416, 19 A.2d 368 (1941). Typically, civil service employees' qualifications and fitness are evaluated by an initial examination and a probationary period, after which they are admitted to this protected status. *Tegzes*, 504 Pa. at 309, 472 A.2d 1386; *Zaccagnini v. Borough of Vandergrift*, 395 Pa. 285, 291, 150 A.2d 538 (1959). As one Pennsylvania court explained, "The basic principle ... is that the application of the civil service laws is a two way street, i.e., before one may invoke the protections afforded thereby, one must show that an appointment or promotion was in accordance with the laws in effect at the time of the appointment or promotion." *Municipality of Penn Hills v. Municipality of Penn Hills Personnel Bd./Civil Service Com'n*, 87 Pa.Cmwlth. 552, 557, 487 A.2d 1048 (1985). Plaintiff Marburger in the instant case took no entrance examination and underwent no probationary period. She had no likelihood of securing the protection of a tenured position for exercising good behavior, since her appointment was, the parties have stipulated, for renewable one year terms.

Plaintiff's statutory job descriptions, dictating that she serve "at the pleasure" of the Board, suggest that she was appointed by and could be removed by the Board at its discretion. The Pennsylvania Supreme Court explicitly distinguished a Civil Service position from a position like Plaintiff's:

> The removal for just cause of an appointed municipal official is clearly distinguishable from removal from the civil service. The provisions by which the civil service operates constitute a strict framework of operations by which no employee may be appointed, or transferred, reinstated, or discharged in any

manner or by any means other than those specified by statutes regulating civil service. [Citations.] . . .

Appointed officers, conversely, were traditionally subject to removal at the discretion of the appointing official, for the power of removal, in the absence of a specific provision to the contrary, is incident to the power of appointment. *Burnap v. United States,* 252 U.S. 512, 40 S.Ct. 374, 64 L.Ed. 692 (1920); *Keim v. United States,* 177 U.S. 290, 35 Ct.Cl. 628, 20 S.Ct. 574, 44 L.Ed. 774 (1900); *Blake v. United States,* 103 U.S. 227, 16 Ct.Cl. 637, 26 L.Ed. 462 (1881). Where the power to remove is discretionary, the courts will not inquire into the grounds for removal.

*Borough of Blawnox Council v. Olszewski,* 505 Pa. 176, 184, 477 A.2d 1322 (1984). Thus, because Plaintiff could be appointed or removed by the Board at its pleasure, and the terms of her employment were set by the Board, her employment was not subject to the civil service laws of the Township. She was therefore not an "employee" under 29 USC § 203(e)(2)(C)(i).

## B. Personal Staff/Policymaker

█ Though Plaintiff was not a civil servant, she would nonetheless be considered an "employee" under the FLSA since she worked for a public agency—unless she was appointed to serve as a personal staff member to the Board, on a policymaking level or as an employee in the Township's legislative branch. *See supra* 29 USC § 203(e)(2)(C)(ii)(II, III and V). However, Defendants argue that Plaintiff's appointment was all three of these, i.e. that she was personal staff, with policymaking influence, operating in a legislative capacity, and that she cannot qualify as an "employee" under any prong of the FLSA.

Scanty Third Circuit case law exists defining who is an "employee" under the FLSA. Unlike with the clear-cut determination of civil service employee status, we must look to the "nature and circumstances of the employment relationship between the complaining individual and the elected official[s] to determine if the [personal staff, policymaking or legislative exceptions apply]." *Teneyuca v. Bexar County,* 767 F.2d 148, 152 (5th Cir.1985). *See generally* 72 A.L.R. Fed. 522, §§ 7–8 (1985), "Who is 'Employee,' [sic] As Defined in § 701(f) of the Civil Rights Act of 964, 42 USCA § 2000e(f)." Thus, to determine if Plaintiff is excepted from EPA coverage, we have synthesized seven inquiries from federal cases nationwide under this statute, Title VII and other anti-discrimination legislation—all of which contain similar statutory provisions with respect to the term "employee." *Brewster v. Barnes,* 788 F.2d 985, 990 n. 7 (4th Cir. 1986).[5]

### 1) Was Plaintiff appointed by the Township Board of Supervisors?

The presumption that an individual is not a covered "employee" begins when an individual is hired by elected officials, like the Board, to serve on their staff. In one case, the Fifth Circuit found that a defendant shifted its burden of production on this question by showing that Assistant District Attorneys were hired entirely by the District Attorney at his discretion. *Teneyuca,* 767 F.2d at 152–153. Plaintiff does not dispute that she was appointed by the elected Board, thereby contributing to the impression that she was a personal staff member, not an employee.

---

**5.** Recall that we apply state law in describing Plaintiff's position and federal law in determining whether Plaintiff is an "employee" based on the nature of this position. *Owens v. Rush,* 654 F.2d at 1375.

### A) Was the Board active in her selection or did it merely concur?

The fact that Plaintiff was ultimately hired by the Board would be insufficient, in an of itself, to remove her from the class of protected employees. In *Anderson v. Albuquerque*, 690 F.2d 796 (10th Cir.1982), the Staff Director of the City's Human Rights Board was appointed by the Mayor, but the Mayor's actual participation in the appointment was virtually nil; he merely concurred in the plaintiff's selection. This fact helped establish that the plaintiff was not on the Mayor's personal staff, and the plaintiff was found to be an "employee" under Title VII.

In the instant case, we find the Township Board was not merely a rubber stamp in Plaintiff's selection. She was initially hired as Treasurer/Assistant Secretary after interviews with all five members of the Board of Supervisors. Plaintiff's Response to Summary Judgment, Ex. E, 10:4–10. Moreover, one of Plaintiff's chief complaints is that she was denied promotion to the Township Manager position, for which the hiring was conducted exclusively by the elected Board. Thus, the Board was instrumental in Plaintiff's selection, suggesting that she was more like the Board's personal staff member than an EPA-protected "employee."

### B) Did Plaintiff serve at the pleasure of the Board?

In *Ramirez v. San Mateo County Dist. Attorney's Office*, 639 F.2d 509 (9th Cir. 1981), the plaintiff Deputy District Attorney served at the pleasure of the District Attorney, who had exclusive selection and retention authority over deputies based on the D.A.'s personal satisfaction. The court found the Deputy District Attorney was the D.A.'s personal staffer, not a county "employee." Likewise in our case, as we have noted, the statutory definitions of Second Class Township Secretary and Treasurer indicate that these officials serve at the Board's pleasure (53 PS §§ 65701–65704; 53 PS §§ 65801–65803), i.e., personal satisfaction, tending to indicate Plaintiff was not an "employee."

### 2) Who supervised Plaintiff?

A California court following the Fifth Circuit's *Teneyuca* decision, *supra*, found that the plaintiff, an assistant to a County Supervisor, was the Supervisor's personal staff member, exempt from FLSA requirements. *Renna v. County of Fresno*, 78 Cal.App.4th 1, 92 Cal.Rptr.2d 586, 595 (2000). The *Renna* court based its decision in part upon the fact that the elected County Supervisor exclusively delegated the plaintiff duties and evaluated the plaintiff's work. *Id.* In Plaintiff Marburger's case, for much of her employment, the Township Board members acted more like her second-level supervisors. At first, her work was primarily delegated and evaluated initially by the alleged sexual harasser, her immediate supervisor, who was the Township Secretary and simultaneously, an elected member of the Township Board. Plaintiff's Response to Summary Judgment, Ex. C, 16–21. Plaintiff called the Board President to complain of her manager's sexual harassment. *Id.* at Ex. E, 22. After the alleged harasser resigned, Plaintiff reported directly to the Board until a replacement was hired. *Id.* at Ex. D, 46–48, 53–60. However, the Board eventually hired a Township Manager who issued Plaintiff her assignments and evaluated her performance. *Id.* at Ex. S–Z, CC–TT. When the replacement Township Manager experienced difficulty with Plaintiff's performance, he formally notified the Board of his concerns and of his intention to conduct further evaluation. *Id.* at Ex. TT. Plaintiff demanded a Board hearing to appeal the Township Manager's reprimand. *Id.* at Ex. AA.

In sum, during the first period, Plaintiff primarily assisted a Board Member, but

pursuant to the latter's responsibilities as Township Secretary, rather than as an elected official. In the interim period, Plaintiff reported directly to the elected Board. Subsequently, her contact with the elected officials was primarily through the Township Manager.

Plaintiff was not far beyond the parameters of covered "employee" status, as in EEOC Decision No. 78–33 (June 1, 1978) CCH EEOC Decisions ¶ 6718, cited in 72 A.L.R. Fed. 522, § 8[a], in which the plaintiff reported to a supervisor four steps removed from the elected mayor. Rather, the record in our case is mixed with respect to the fourth inquiry and we will rely more heavily upon the others.

3) Was Plaintiff more like a clerk or a first-line adviser to the Board? That is, were Plaintiff's daily responsibilities more administrative, or more substantive?

The Tenth Circuit in *Owens v. Rush*, 654 F.2d at 1375, studied the legislative history of Title VII's "employee" definition:

The legislative history of § 2000e(f) indicates that Congress intended that the personal staff exception be construed narrowly. The report of the conference committee of the House and Senate on this section states in pertinent part: "It is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees (sic) intent that this exemption shall be construed narrowly. ...." (1972) U.S.Code Cong. & Ad.News 2180.

The Senate debate on this section also sheds some light on the intended scope of this exception to Title VII coverage. Senator Ervin, the sponsor of the original Senate amendment containing the exemption, agreed during the debate that the purpose of the amendment was "to exempt from coverage those who are chosen by the Governor, or by the mayor or the county supervisor, whatever the elected official is, and who are in a close personal relationship and an immediate relationship with him. Those who are his first line advisers." 118 Cong. Rec. 4492–93 (1972); see also *Gearhart v. Oregon*, 410 F.Supp. 597, 600–601 (D.Or.). Thus it would appear that Congress intended for the personal staff exception to apply only to those individuals who are in highly intimate and sensitive positions of responsibility on the staff of the elected official.

The gist of our underlying EPA case here is that Plaintiff was performing high-level responsibilities, especially after her original supervisor, the Township Secretary resigned, that she should have been compensated accordingly and that failure to do so was discriminatory. Thus, Plaintiff has made every effort to emphasize her intimacy with the Board and the Board's constituency and the elevated level of her responsibilities. Her position in this respect is at cross-purposes to what she must assert to gain jurisdiction as an "employee" under the EPA, because under the EPA she must emphasize the clerical nature of her position, far-removed from the Township government's decision-makers. In the end, these positions are irreconcilable.

Assuming Plaintiff's asserted facts are true, her responsibilities overlapped with the Township Secretary's in many regards, such that she was often the Board's first-line adviser. For example, she was a liaison between the Township's road mainte-

nance staff and the Board of Supervisors, overseeing the road crew's execution of Board directives. Plaintiff's Response to Summary Judgment, Ex. WW. She helped prepare the Township budget and analyzed investment possibilities for Township funds. *Id.* She oversaw record keeping and document signing as directed by the Board and prepared Board agendas. *Id.* Plaintiff must have had substantial contact with the Board in order to properly express its will as she interacted on the Board's behalf with a wide variety of Township officers (e.g., the Zoning Officer, Planning Commission Secretary and Building Inspector). *Id.* Finally, and perhaps most persuasively, Plaintiff was the primary emissary between the Township citizens and the Board. *Id.* All of these functions suggest that the Board placed a high degree of confidence and trust in Plaintiff, and that she was more like a personal staff member than an "employee" covered by the EPA.

### 4) To what extent did the public judge the Board by Plaintiff's performance?

Analyzing the FLSA's "personal staff" exemption, the *Renna* court in California considered whether an assistant to a County Supervisor represented the Supervisor in the eyes of the public. *Renna*, 92 Cal. Rptr.2d at 594. The court looked to the plaintiff's job description, which stated that board member assistants were to represent the board member with the public, handling constituent complaints. *Id.* In addition, appellant's job description required her to handle important contacts, representing the Supervisor's viewpoint on the telephone and in person at meetings. *Id.*

Plaintiff Marburger, as we have noted, had similar contacts with the general citizenry and other Township officials on the Board's behalf. Her representation of the Township extended also to business owners, property owners and developers, real estate agents, zoning hearing officers, petitioners to Township commissions, outside governmental entities, etc. Plaintiff's Response to Summary Judgment, Ex. WW.

The extent of Plaintiff's contact with the public makes it appear as though she was the Board's chief spokesperson, which strongly favors removing her from the class of "employees" covered under the EPA.

### 5) To what extent did Plaintiff participate in policy or legislation formulation and implementation?

The EPA specifically exempts those serving elected officials in policymaking or legislative assistance capacities from protected "employee" status under 29 USC § 203(e)(2)(C)(ii)(III) and (V), *supra.* In EEOC Decision No. 78–42 (Sept. 29, 1978) CCH EEOC Decisions ¶ 6725, cited in 72 A.L.R. Fed. 522, § 8[b], the Commission observed that in order to implement policy goals, an elected official will select individuals to assist him who have similar political and ideological outlooks. "Congress intended to allow the elected officials freedom to appoint those with whom they could best work," *id.*, and consequently gave elected officials greater freedom with respect to their personal appointees. The Commission asked to what degree the plaintiff participated in formulating policies and making recommendations in furtherance of those policies. *Id.*

Here, Plaintiff Marburger states that she formulated and administrated bidding procedures, prepared the budget, analyzed Township investment possibilities, collected certain taxes, authored Township grant and loan requests and administered funding received, screened consultants, evaluated building permit applications, initiated new zoning procedures, explained development options in light of zoning requirements, helped administer the Township's

514

zoning regulations and regulations enforced by the Township Engineer, briefed the Planning Commission on policy questions and frequently answered public questions interpreting Township policies. Though many of these tasks undoubtedly had clerical/administrative components, all of them—and certainly their sum total—had profound implications on Township policy and legislation.

Though on some of our seven criteria the matter is a close call, in the final analysis we find that Plaintiff served the elected Township Board as a personal staff member, in a policymaking and legislative capacity. She cannot be considered an "employee" under 29 USC § 203(e)(2)(C)(ii) of the FLSA, which applies to the EPA.

## CONCLUSION

For the foregoing reasons, we find that Plaintiff was not covered under Title VII or the EPA, and therefore lacks subject matter jurisdiction. The case is dismissed and remanded to state court.